Howard, J.
It is provided in section 1988, Burns’ R. S. 1894 (1915, R. S. 1881), that “Whoever kidnaps, or forcibly or fraudulently carries off or decoys from his place of residence, or arrests or imprisons any person, with the intention of having such person carried away from his place of residence, unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnapping, and, upon conviction théreof, shall be fined not more than than five thousand dollars nor less than one hundred dollars, and be imprisoned in the state prison not more than fourteen years nor less than two years.”
Under this statute it was charged that appellant, with another, at and in the county of Marion, and State of Indiana, on the 24th day of April, 1896, “did then and there, feloniously, knowingly, and fraudulently carry off and decoy and kidnap Arizona Wilson and Rosa Wilson from their then place of residence in the city of Indianapolis, Indiana, and carry *620 the said Arizona Wilson and Rosa Wilson away from their then place of residence in the said city and county aforesaid, into the city of Evansville, Indiana, said acts not being, then and there, done in pursuance of the laws of the State of Indiana or of the United States,” etc.
The cause was submitted to the court for trial, resulting in a finding of guilty, followed by a judgment that appellant be fined in the sum of $100.00 and be imprisoned in the Reform School for Girls and Woman’s Prison for two years.
It is contended that the finding is not sustained by sufficient evidence. This contention is based upon the claim that it is not established by the evidence that the children kidnapped had acquired a residence in Indianapolis at the time they were taken from that city by appellant.
It appears from the evidence, as fairly stated in the brief of appellant’s counsel, “That the father and mother of these two little girls, with their older brother, had formerly made their home in Texas; that the little girls were acrobats, and that they were traveling over the country, giving exhibitions by themselves, and also at times in connection with other shows; that some three weeks before the date of the alleged offense the family was stranded at Danville, Illinois, with the intention of going from there to Chicago when they could raise means to do so, and while there some negotiations were made with another show with a view of joining with it in giving exhibitions throughout the country; that while there the father sent the boy and the two little girls to Indianapolis for the purpose of giving some exhibitions to raise money with which to carry them to Chicago, and with the intention that when the money was so raised, for them to return to him at Danville; that *621 there was no intention at that time, nor at any time, of the father and mother going to Indianapolis at all; and that while they [the sisters and their brother] were here the alleged kidnapping took place; that the father and mother, after the children had been [recovered] and taken in custody by the authorities, came to Indianapolis for the sole purpose of assisting in the prosecution of this appellant and her co-defendant, Osborn.”
This evidence undoubtedly shows that for many purposes the children had not acquired a residence in Indianapolis at the time when they were kidnapped. Had they been male citizens of the United States and twenty-one years of age, they would not be residents so as to be entitled to vote. Nor had they acquired a residence so as to be entitled to support as poor persons. That is, they had not acquired a permanent residence; they were not domiciled at Indianapolis. But we think they .were residents in the sense contemplated in the statute cited. They were at a place where they had a right to be, at the place to which they had been sent by their parents. They were there engaged with their elder brother, and in his care, in the business in which their parents had requested them to engage. The law had not therefore ceased to throw its protecting arm around them when they were approached by and subjected to the wiles of the kidnapper.
“Residence,” as said in Anderson’s Law Diet., “may import temporary sojourn or permanent domicile.” And it is there added: “The precise meaning depends upon the purpose and phraseology of the particular statute.”
The purpose of the statute here under consideration certainly was not that a child might be kidnapped at its father’s house, but not if it were on a visit at a *622 friend’s in a near or distant city. .The evident purpose was rather to provide against the kidnapping of a person from any place where he has a right to be, whether that be the place of his “temporary sojourn or permanent domicile.” A child may be kidnapped, not only from its domicile, or the home of its parents, but likewise from a neighbor’s house, from church, or school, or hotel, from a hall of public entertainment, or, in fact, from any place where it has a right to be; and it is in that sense that the word residence is here used. We do not think there can be any doubt as to the meaning of the statute.
Judgment affirmed.