## SMITH v. LAMB.

### Opinion delivered July 6, 1908.

1. HUSBAND AND WIFE—CONVEYANCE IN VIEW OF DEATH—FRAUD.—Where a husband, realizing that his death was impending, made a conveyance of his personal property for the purpose of depriving his wife of her distributive rights therein, such conveyance is void as to her. (Page 347.)

2. FRAUD—CONVEYANCE TO STEPSON.—Where a widow, for valuable though inadequate consideration, conveyed her interest in her husband's estate to a stepson, the conveyance will not be disturbed if there is no evidence that the conveyance was obtained by fraud, undue influence or coercion. (Page 347.)

Appeal from Mississippi Chancery Court, Chickasawba District; *Edward D. Robertson,* Chancellor; reversed.

STATEMENT BY THE COURT.

In May, 1905, Naomi Lamb, formerly Naomi Smith, instituted this action, claiming dower and homestead in the lands described in the complaint. She alleges that she is the widow of I. H. Smith, deceased, who departed this life in June, 1903, and that said lands comprised his homestead at the time of his death. She also alleges that at the time of his death said I. H. Smith was the owner of certain personal property, and that his life was insured in the sum of $2,000, made payable to his estate. The said I. H. Smith left surviving him several children, some of whom are adults and some of whom are minors, all of whom are made parties to this suit by proper service of summons. I. H. Smith had been married to appellee for about 7 years prior to his death. He left 3 minor children by a former wife, Hettie, aged 13, Zacharias, aged 10, and Celeste, 8 years old. About four days prior to his death, he executed a bill of sale of all his personal

property to James A. Smith, an adult son. It is as follows:

"For value received I hereby sell and convey unto James A. Smith all of my cattle, about 75 head, all of my hogs, about 125 head, all of my mules and horses, 3 wagons and harness for same. Witness my hand this 19th of June, 1903.

[Signed]    "I. H. Smith."

At the same time his life insurance policy for $2,000, which was payable to his estate, was made payable to said James A. Smith.

The homestead comprised 58 acres of land, adjoining the town of Manilla. About 30 acres of the land was in cultivation, and its rental value was $5 per acre. There was a six-room frame cottage upon it. I. H. Smith had been sick for about four weeks prior to his death. He was afflicted with dropsy of the stomach, and a surgical operation was performed upon him about seven days prior to his death. He had lived upon his homestead about 40 years. After his death, his widow and James A. Smith, one of his sons, entered into negotiations relative to the purchase of her dower and homestead interests. On the 28th day of July, 1903, after an agreement had been reached between them, a deed was prepared by the terms of which appellee conveyed to said James A. Smith all her rights of dower and of homestead in the estate of her late husband for the consideration of $500.

On the same day, pursuant to their negotiations, there was also prepared a contract, by the terms of which appellee was permitted to remain upon the homestead until the 1st day of January, 1904, unless she should sooner complete a dwelling house which she contemplated erecting in the town of Manilla; and, in consideration of her continuing in the meantime to care for the household and minor children, she was to receive one-third of the crops grown upon the homestead. On his part the said James A. Smith bound himself to deliver at her place in Manilla all lumber and other material to be used by her in the construction of her house.

Upon the deed and contract being presented for her signature, she refused to execute the same. The testimony adduced by appellants tends to show that, after consulting with one of her sons by a former husband, she did sign both the contract and the

deed on the 15th day of September, 1903, and acknowledged the same before G. T. Hatfield, a justice of the peace. The justice, who is not shown to have any interest in the case, testifies to both the fact of her signatures and her acknowledgment. He states that her son was present, and that she advised with him. Other witnesses testify to the fact that she afterwards admitted to them the execution of these instruments. Her son denies that he was present when she signed the instruments, or that she consulted with him about signing them. Appellee admits signing the contract referred to. She says that she signed it in duplicate, but denies signing the deed.

The $500 mentioned as the consideration in the deed was paid to her. She admits receiving it, but says she thought it was her part of the insurance. She denies receiving any part of the crop grown on the homestead in 1903. The materials for the construction of a house were furnished her. She finished the erection of her house in Manilla and moved into it in February, 1904. When she left the homestead, she had no intention then of ever returning to it.

Upon being further questioned in regard to it, she said that she intended returning at some time in the future when she found she could not get along with the children of her deceased husband. She remained at her house in Manilla until she married her present husband in March, 1906, when she came to his home near Monette in Craighead County.

In March, 1904, James A. Smith died of consumption, and his uncle, D. A. Smith, became administrator of his estate. He testifies that I. H. Smith had a mortgage on his homestead for about $275 and owed many other debts when he died, and that these were all paid. D. B. Smith, a nephew of I. H. Smith, deceased, identified checks and receipts to the amount of nearly one thousand dollars which he said was paid by James A. Smith in his lifetime on account of the debts due by said I. H. Smith, deceased.

The chancellor found in favor of appellee, the plaintiff below, rendered a decree in her favor, and appointed commissioners to assign her dower and homestead in the real estate described in the complaint. The deed purporting to be executed by her September 15, 1903, to James A. Smith was cancelled and annulled.

The defendants in the court below were granted an appeal.

*W. M. Taylor* and *A. G. Little,* for appellant.

*J. F. Gautney,* for appellee.

HART, J., (after stating the facts). The conveyance or bill of sale of I. H. Smith to his son, James A. Smith, was made only four days prior to his death. It was made at a time when he realized that his own death was impending, and all the facts and circumstances adduced in evidence show that it was made for the purpose of depriving his wife of her dower rights therein, and, having been thus made in fraud of her dower rights, it is void as to her. 4 Pomeroy's Equity Jurisprudence, (3 Ed.), § 1383, and cases cited; *Murray* v. *Murray,* (Ky.) 8 L. R. A. 95; *Stroup* v. *Stroup,* 27 L. R. A. 523; *Walker* v. *Walker,* 27 L. R. A. 799; *Smith* v. *Smith,* 34 L. R. A. 49.

Upon a careful consideration of the testimony, we are of the opinion that a clear preponderance of the evidence establishes the fact that appellee signed the deed of September 15, 1903, conveying to James A. Smith her right of dower and of homestead in the estate of her deceased husband. But a more serious question presents itself in determining whether or not the execution of that deed was procured by fraud or undue influence, and therefore brings the case within the limits of the principle established by the case of *Parker* v. *Hill,* 85 Ark. 363, and of *Million* v. *Taylor,* 38 Ark. 420, cited therein. But a thoughtful review of the evidence leads us to a conclusion that the facts of the present case do not bring it within the rule there announced. Appellee was only the stepmother of James A. Smith. There was no great disparity in their ages. She does not claim to have reposed confidence in him, and there was no good reason why she should have relied upon him; for the testimony shows that she was not on good terms with her stepchildren, so much so that they did not wish to live with her. No trust relations existed between the parties; and, although the contract may be said to have been improvident, we do not think the evidence establishes that it was obtained by fraud, undue influence or coercion.

The decree is reversed with directions to dismiss the complaint for want of equity.