Crawfordsville Trust Co. *v.* Ramsey—55 Ind. App. 40.

---

# The Crawfordsville Trust Company, Executor, et al. *v.* Ramsey.

[No. 7.922.   Filed February 20, 1913.   Rehearing denied June 26, 1913.   Transfer denied December 9, 1913.]

1.  Wills.—*Election by Widow.—Action.—Appeal.—Time for Perfecting.*—An action by the widow of a testator, in which no issues were tendered involving any question as to her right to share in the estate as widow, but in which the questions were whether she should be bound by her election to take under the will, and whether deceased in his lifetime had made a valid transfer and assignment of certain stocks and bonds so that they were no part of his estate at the time of his death, is not in any way affected by the decedents' estates act, and hence §§2977, 2978 Burns 1908, §2454 R. S. 1881, Acts 1899 p. 397, providing that on appeal from a judgment growing out of a matter connected with a decedent's estate the transcript must be filed within one hundred days after rendition of the judgment, are not applicable. p. 60.

2.  Wills.—*Judgment of Invalidity.—Effect.*—Where a will has been declared void in its entirety, it is void as to all persons interested therein, including testator's widow notwithstanding she had previously elected to take thereunder.   p. 62.

3.  Appeal.—*Dismissal.*—An appeal may be dismissed as to a portion of the appellants where such dismissal will not affect the others.   p. 62.

4.  Appeal. — *Dismissal. — Settlement of Controversy.* — An appeal will be dismissed where it is properly and conclusively made to

appear that the litigation has been in some manner ended and disposed of so as to render unnecessary the determination of the questions presented.    p. 62.

5.   APPEAL.—*Dismissal.—Determination of Costs.*—An appeal will not be entertained for the sole purpose of determining who should pay the cost of the litigation.    p. 63.

6.   APPEAL. — *Dismissal. — Want of Actual Controversy.* — Where, pending an appeal to the Appellate Court from a judgment for plaintiff in an action by a widow involving the question of whether she was bound by her election to take under the will, and questions incident thereto, as well as the validity of certain assignments made by testator, the Supreme Court affirmed a judgment declaring the will void, the questions involved, except as to the validity of the assignments, were thereby eliminated and a dismissal of the appeal is required as to those appellants having no interest in the remaining question.    p. 63.

7.   GIFTS.—*Causa Mortis.—Inter Vivos.*—In the case of a gift *causa mortis* the title does not pass immediately, but the gift is conditional in that it can take effect only on the death of the donor, who in the meantime can revoke it, but to constitute a valid gift *inter vivos*, it is essential that the article given should be delivered absolutely and unconditionally, so as to take effect at once and completely, and where one intends a gift *inter vivos* through the instrumentality of an agent, the agent must have performed what was incumbent upon him to make the transfer complete during the donor's lifetime, or the gift fails; hence an assignment of stocks and bonds and the delivery of same to the secretary of a trust company to be cared for until the donor's death, when they were to be delivered to certain trustees, of whom the trust company was one, and made without knowledge or acceptance by either of the trustees during the donor's lifetime, did not constitute a gift *inter vivos*.    p. 66.

8.   GIFTS.—*Inter Vivos.—Special Findings.*—Special findings that a donor at the time of making an alleged gift was suffering from an incurable disease and knew that death was near, that the gift was made in expectation of death from such disease, and that it was conditioned on that event, are inconsistent with a gift *inter vivos*.    p. 68.

9.   GIFTS.—*Inter Vivos.—Conditions.*—It is not necessary that the condition that the property shall not pass until the death of the donor be expressly stated in order to invalidate the gift as one *inter vivos*, but it is sufficient if the condition is implied.    p. 68.

10.  GIFTS.—*Inter Vivos.—Evidence.—Sufficiency.*—On the question of the validity of a gift *inter vivos*, a showing that the subject of the gift was assigned in blank with a reference to donor's will as furnishing the purpose and terms of the gift, and was delivered to

the secretary of a trust company with instructions to care for same, that such secretary understood that the donor had retained the income from such gift, that he failed to say anything about the transaction to the trust company or the board of county commissioners, who were designated in the will as trustees to receive the property given, and that shortly before donor's death such secretary procured from him a second assignment, etc., is insufficient to show an intention to make an irrevocable gift. pp. 69, 70.

11. GIFTS.—*Inter Vivos.*—*Burden of Proof.*—One taking under a voluntary settlement or gift, containing no power of revocation, has the burden of proving that there was a distinct intention on the part of the donor to make the gift irrevocable. p. 69.

12. HUSBAND AND WIFE.—*Power of Husband to Defeat Wife's Interest in Estate.*—*Wills.*—*Gifts Causa Mortis.*—Where testator, after executing his will containing a bequest of stocks and bonds to trustees for charitable purposes, on learning that his wife could defeat the trust by electing to take under the statute instead of under the will, and while afflicted with a fatal malady, executed an assignment of such stocks and bonds in blank, with a reference therein to his will for the terms and purposes of the assignment, and delivered the same to the secretary of a trust company which was designated in the will as one of the trustees, to be cared for by such secretary, but without any knowledge or acceptance by either of the trustees, and thereafter while *in extremis* executed a new assignment in which he retained the income of the stocks and bonds during life, the transaction was testamentary in character rather than of the nature of a gift *inter vivos*; but, regardless of its character, it was not binding on the widow, since, while a husband as a general rule may do as he pleases with his personal property, he cannot at the approach of death give it away for the purpose of defeating his wife's rights under the statute. pp. 70, 77.

13. TRIAL.—*Findings.*—*Conclusions of Law.*—Where the issues involved were as to the validity of an assignment of stocks and bonds made by plaintiff's husband while *in extremis* for the purpose of effectuating the provisions of his will creating a charitable trust, and as to plaintiff's right as widow to take her one-third in the property assigned, a finding of facts showing the assignment invalid was sufficient to warrant a conclusion that plaintiff is entitled to her distributive share as widow in the property involved in such assignment. p. 73.

14. TRIAL. — *Findings.* — *Conclusions of Law.* — Where the facts found in a special finding lead to but one conclusion or result, the deduction is a conclusion of law and not an ultimate fact. p. 74.

15. HUSBAND AND WIFE.—*Gift by Husband to Defeat Wife's Interest in Estate.*—*Fraud.*—A finding of fraud as a fact was not

essential to authorize a conclusion of law that a decedent's widow was entitled to her distributive share in property involved in a gift or assignment made by him with a view to defeating her rights as a widow.  p. 74.

16.  APPEAL.—*Review.*—*Ruling on Motion to Retax Costs.*—Where there was no judgment for appellants on any issue involved, and no motion for any such judgment, no available error is presented on the overruling of a motion to retax costs.  p. 74.

17.  HUSBAND AND WIFE.—*Assignment by Husband to Defeat Wife's Interest in Estate.*—*Evidence.*—*Admissibility.*—In a widow's action to set aside an assignment of stocks and bonds made by her husband for the purpose of defeating her rights as widow, the admission of evidence of plaintiff to the effect that she did not see the instrument, which was executed only two days before his death, was proper as bearing on the question of decedent's mental condition.  p. 74.

From Clinton Circuit Court; *Jos. Combs,* Judge.

Action by Ice H. Ramsey against The Crawfordsville Trust Company, as executor of the will of Alexander F. Ramsey, deceased, and others.    From a judgment for plaintiff, the defendants appeal.  *Affirmed.*

*Guenther & Clark, Crane & McCabe* and *Finley P. Mount,* for appellants.

*Thomas & Foley, Samuel M. Ralston, Harry C. Sheridan* and *Kennedy & Kennedy,* for appellee.

HOTTEL, J.—This action is based upon a complaint of five paragraphs covering about sixty printed pages.  Answers and replies correspondingly long and a special finding of facts with conclusions of law extending over sixty-four printed pages were also filed in the case.  This, with a record containing over 4,000 pages of evidence, and numerous separate assignments of error by many appellants, make it extremely difficult to present, in an opinion of reasonable length, a statement of the issues, the findings and the evidence that will intelligently present the several questions to be determined.  However, this labor has been materially lessened by a recent decision of the Supreme Court in the case of *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178

Ind. 258, 98 N. E. 177, which, for the reasons hereinafter indicated, has eliminated one branch of the case and a number of questions incident thereto.

There is no dispute between the parties as to certain general facts upon which the several pleadings are based, and which are found by the finding and shown by the evidence. These facts are necessary to an understanding of the questions with which this opinion will have to deal, and we now set them out. Alexander F. Ramsey, for many years a resident of the city of Crawfordsville, Montgomery County, Indiana, died testate at Hot Springs, Arkansas, on March 11, 1907, leaving surviving him, a widow, Ice H. Ramsey, the appellee; a son, Charles P. Ramsey, and a daughter, Hepsey B. Yount, as his only heirs. The decedent was twice married before his marriage to appellee. The first and second marriages were each dissolved. He married appellee January 13, 1883. The son and daughter were children by his second wife. At the time of his death, decedent had accumulated a considerable fortune and during his life had made three wills. The first will was made June 11, 1894, the second, August 25, 1906, and the last, February 5, 1907. In each of these wills the decedent provided for a fund to be known as the "A. F. Ramsey Relief Fund for the Poor of Crawfordsville, Indiana." For the purposes of the questions to be determined in this opinion, the provisions of the several wills may be treated as being the same in each will, except that in the last will the decedent added to the poor fund forty "One thousand dollar bonds" of the "Indianapolis, Crawfordsville and Western Traction Company" which were of the value of $24,000, together with all the stock which he held in that company which was of no value, and instead of devising the stocks and bonds to the board of commissioners of said county alone as trustee, as in his former wills, he devised such stocks and bonds to such board of commissioners and their successors in office, and to the Crawfordville Trust Company of Crawfordsville,

Indiana, jointly as trustees. At the time of the making of the second will, the decedent signed and acknowledged a quitclaim deed conveying to his wife two pieces of business property in the city of Crawfordsville of the probable value of $15,000 and the annual income from which was $1,680. This deed, was not delivered to the wife until in January or February, 1907. Each of the wills devised the real estate known as the home place to appellee for life and at her death to go to the daughter Hepsey B. Yount. Certain other real estate was devised to her for life and at her death to the trustees of said poor fund. The decedent organized the Citizens National Bank of Crawfordsville, Indiana, in 1883 and was elected its president and held such position until his death. In the year 1889, he organized the Crawfordsville Trust Company, became one of its stockholders and directors, was elected its president and sustained such relations to said trust company until his death, and made the office of such company his principal place of business. Walter F. Hulet was the secretary of such trust company during a great part of this period. About the year 1905, Ramsey with others organized the "Indianapolis, Crawfordsville and Western Traction Company" known as the "Ben Hur Line," for the purpose of building an interurban road from Crawfordsville to Indianapolis and at the time of such organization became a stockholder and director and was elected and remained its president until his death. After making his last will, Ramsey obtained information that the trust fund therein created could be diminished by his widow electing to take under the law instead of taking under the will and he then, on February 21, 1907, prepared, signed and delivered to Mr. Hulet an instrument of assignment assigning to the same trustees the same stocks and bonds which he had in his will given to such trustees and at the same time prepared, signed and delivered another instrument of assignment assigning other and additional shares of bank stock. These deeds of assignment referred to the

provisions of the will as furnishing the purpose for which the trust was created and providing the manner of its management and control. On March 9, 1907, two days before the death of Mr. Ramsey, Mr. Hulet was in Hot Springs, Arkansas, and at that time the decedent signed and delivered to him another deed of assignment for the same stocks and bonds before assigned. Said assignments of said stocks and bonds and each of them were without any consideration. On March 20, 1907, the appellee executed an election in writing to take under the will of her deceased husband and March 22, 1907, caused it to be filed in the office of the clerk of the Montgomery Circuit Court and recorded in the will record of that court. Hepsey B. Yount, as a consideration for the filing of the election, conveyed to appellee by quitclaim deed the real estate in Crawfordsville known as the home place in which appellee had been given a life estate by the will of her deceased husband. Said deed contained the following provisions, viz., "And the said grantee by accepting this deed waives all her rights in and to the estate, both real and personal, of which the said Alexander F. Ramsey died seized, wherever situate, excepting only those rights and interests saved and secured unto her by the terms of said will, and which said will was probated in the Montgomery Circuit Court on the 16th day of March, 1907. Provided always, that this conveyance is upon the express condition that the will of Alexander F. Ramsey, deceased, shall not be set aside, broken and held for naught at any time by the judgment of any court, then this deed shall in all respects be void." On March 25, 1907, appellee by an instrument in writing, duly signed and acknowledged, revoked her election to take under the will and elected to take as the widow of her deceased husband and therein accepted the provisions made for her by the statute and law of descent of the State as such widow, which instrument was filed by her on said day with the clerk of said court and was by such clerk recorded in the will records of said county, and

appellee on said day caused to be served on said trust company trustee, notice in writing of her intention to rescind and revoke her said election made on March 20, and that she had filed her election to take under the law, and on said day signed, acknowledged and tendered to Hepsey B. Yount a quitclaim deed for said home place, being the same real estate before mentioned herein as being conveyed by Hepsey B. Yount to appellee. In January, 1906, decedent was taken ill, was threatened with pneumonia and was under the care of a physician, and in the latter part of February, an examination of his urine disclosed that he was suffering from acute Bright's disease. On August 28, 1906, the decedent, accompanied by his wife and family physician went to Mountain Valley Springs, Arkansas, to recuperate his health. He arrived at the Springs, September 1 and remained until December 20, 1906, when he returned to his home in Crawfordsville. His illness grew worse and on February 26, 1907, he, in company with his wife and a colored servant went to Hot Springs, Arkansas, to get the benefit of the waters of that city, and there died on March 9, 1907. The decedent, on each of the occasions when he made the assignments of the stocks and bonds above referred to, and for sometime prior thereto, knew the character of his illness, knew that it was fatal and that he had but a short time to live. After this suit was filed, Hepsey B. Yount died leaving a husband and three minor children. Said trust company was appointed administrator of her estate, and guardian of her minor children and as such it and the husband of Hepsey B. Yount were substituted as defendants.

As the question of the sufficiency of the several pleadings is not presented, we need only indicate their general scope and tenor. The first paragraph of the complaint sets out the will of the decedent, the appellee's election to take thereunder, her after revocation and asking to have her election set aside and that she be permitted to take under

the law. The paragraph proceeds upon the theory that the appellee, at the time she made her election, was suffering from nervous strain, worry and grief, resulting from the recent illness and death of her husband and on account thereof was not in a frame of mind to understand and act intelligently. The second paragraph differs from the first in that it also sets out the deed made by Hepsey B. Yount above referred to as furnishing the consideration for appellee's election and avers that when she accepted the same and made her election, she thought she was getting a good deed and title to her home place and that she could sell the same at any time and make a good deed to the same; that in executing said election and accepting the deed she did so without knowing or understanding the legal effect of her husband's will or the legal effect of the other instruments; that she tendered back to Hepsey B. Yount a deed to the premises, a copy of which is set out in the complaint. She asks to have both the deed and election set aside and canceled and that her revocation of the election be confirmed and that she be allowed to take under the law. The third paragraph differs from the second in that it contains additional averments relating to the assignment of the stocks and bonds above referred to as made by the decedent on March 9, 1907; it sets out the assignment and alleges in effect that the signature of the decedent to it was procured by Hulet while acting in his own interest and in the interest of the trust company for the fraudulent purpose of securing the control of the stocks and bonds for himself and for the company, and to prevent appellee from inheriting an interest therein; that when said instrument of assignment was signed by the decedent and delivered to Hulet, he did not have either the stocks or bonds in his possession, and did not deliver the possession thereof to the trust company or board of commissioners, and that the instrument was neither delivered nor accepted by said trustees or either of them during the life of the decedent. In this paragraph

the appellee asked to have the revocation of her election confirmed that she be permitted to take under the law, that her election and the deed to her from Hepsey B. Yount be canceled and annulled and her husband's assignment of said stocks and bonds be declared void and set aside. The fourth paragraph differs from the third in that it alleges that appellee's election was secured by certain fraudulent representations made by Hulet. The fifth paragraph in its main features is the same as the fourth.

The administrator of the estate of Hepsey B. Yount, her husband and the guardian of her children, filed a special answer to each of the paragraphs of the complaint in which they admit all the essential facts with reference to the execution of the several instruments mentioned therein and aver that the decedent, Hepsey B. Yount, was interested in seeing that her father's will should be carried out and the trust fund therein provided for, allowed to stand, and desired her property separated from the appellee's, and that for this reason she made the deed to appellee mentioned in the complaint; that her brother Charles was a wayward son and her father feared that he would make trouble, and contest his will, and might thereby defeat the father's intent and purpose with reference to such trust fund; that to prevent such a result and at the same time to furnish appellee with a ready income in case the son did contest his will, he made a deed to appellee conveying to her a life estate in certain real estate before mentioned herein and on February 21, 1907, made the assignments of the bank stocks and bonds before mentioned herein, and at the same time turned over and delivered such stocks and bonds with said assignments to the Crawfordsville Trust Company, trustee; that the executor of the will of Ramsey, delivered other stocks and bonds to Hepsey B. Yount, residuary legatee, which she assigned after appellee had elected to take under the will, and before her revocation was filed;

that Hepsey B. Yount never herself made or authorized any one to make for her any representations to appellee to secure her to make said election, but that such election was made by appellee with a full knowledge of all the facts, etc.

The Crawfordsville Trust Company filed a special partial answer to the third, fourth and fifth paragraphs of complaint in which it alleges that on February 21, 1907, the decedent then being the owner of the stocks and bonds mentioned in the complaint, transferred and assigned the same to said trust company and its codefendant, the board of commissioners of Montgomery County, and endorsed and delivered to said trust company each of the 160 shares of bank stock, and delivered each of the bonds which were each payable to bearer; that the trust company took and received the certificates and shares of stocks and bonds from the decedent and has ever since owned and held exclusive possession thereof; that concurrently with the delivery to the trustee of said stocks and bonds, Ramsey made, executed and delivered to such trust company instruments in writing in evidence thereof, that the will mentioned in each of said instruments is the same as that admitted to probate on March 16, 1907, and the same as that set forth in each of the paragraphs of complaint, and that such will was on February 21, 1907, in the possession of said trust company and so remained in its possession until it was probated. It claims that its right in such stocks and bonds is superior to that of any other person and asks judgment for costs. The trust company as executor also filed a separate answer in which it set up the assignments of February 21, 1907, and averred substantially the same facts contained in the answer filed by the heirs of Hepsey B. Yount.

The plaintiff replied in nine paragraphs to the trust company's partial answer, the first of which alleges that on February 21, 1907, when said instruments of assignment were signed, and for weeks prior thereto, decedent was afflicted with a fatal disease and was then in his last illness

and in danger of dying at any time, which facts were well known by him; that the transfer of said stocks and bonds was colorable only and was made for the purpose of preventing the appellee from receiving her share and interest therein as widow at a time when the decedent "had in mind and in contemplation his early demise." The second paragraph of reply is, in all essential respects, the same as the first with additional averments alleging in substance that at the time of the making of the assignments of February 21, 1907, it was understood and agreed between the decedent and said trust company that during the life of decedent, it should collect and pay over to him all the income of said stocks and bonds so assigned, the purpose of the decedent being "to retain for himself during his life the income therefrom and to deprive the plaintiff of any interest or share in such stocks and bonds after his death." The third paragraph avers about the same facts as the first and that the decedent executed the assignments for the fraudulent purpose and design of depriving the plaintiff of her statutory rights in said stocks and bonds, in case she survived him. The fourth paragraph alleges that at the time of the execution of said instruments of assignment, the decedent was of unsound mind. The fifth paragraph avers that the 160 shares of bank stock were not transferred on the books of the bank until after the death of Ramsey, and that such bank was organized under and pursuant to the national banking laws of the United States. The reply asks that the decedent be adjudged the owner of such stock at the time of his death. The sixth paragraph sets up the enfeebled mental and physical condition of the decedent, and avers the existence of a confidential relation between the decedent and the trust company and its officers and agents, and that such company for the purpose of getting control of said property and to prevent appellee from getting any interest therein upon the death of said Ramsey betrayed its relation of confidence

and trust and induced the decedent to make the assignment without appellee's knowledge or consent, and that the same was not the free will act of decedent. The seventh paragraph avers that the decedent with the assistance and advice of Hulet, the secretary of the trust company, obtained legal advice to the effect that his will of February 5, would not prevent the appellee from taking her share in the trust fund, and that for the purpose of depriving appellee of her interest therein, in case she survived him, the decedent with the aid, assistance and advice of said Hulet made the assignments with the understanding and agreement that all the interest and income therefrom was to be paid to said Ramsey during his life; that such assignments were made without any consideration and in contemplation of death, the decedent at the time believing he would live but a few days. The eighth paragraph was substantially the same as the seventh except it averred more in detail the facts and circumstances leading up to the assignments. The ninth paragraph was a general denial.

Upon the issues so presented, the cause was submitted to the court for trial with a request for a special finding of facts. The court made such finding and therein found the general facts to be substantially as before set out in this opinion. This finding also set out the contents of the last will of decedent, and the several instruments of assignment made by him, and found the facts leading up to and connected with the making of the last will and assignments. Many of the facts found are evidentiary in character but we here set them out to avoid repetition in discussing the sufficiency of the evidence. The facts are substantially as follows: Decedent on February 1 and 2, 1907, at the office of the appellant trust company, in the city of Crawfordsville, took up with its secretary, Walter Hulet, the matter of rewriting his will, made August 25, 1906, and indicated to Hulet certain conditions which he desired to make therein and requested him to take such will to his

attorney, Finley P. Mount, and request him to rewrite it, incorporating therein such desired changes. Hulet pursuant to such request, took the will to Mount and informed him of decedent's desires and instructions with reference thereto, and furnished him with written memoranda of the changes the decedent desired made therein. The attorney, acting upon the instructions so received, prepared a will incorporating therein the provisions of the will of August 25, 1906, with the changes directed by decedent and delivered the draft thereof to the decedent at his home on February 4, 1907, and on the following day decedent took the same to the office of said trust company and there signed the same in the presence of witnesses. This will was left with said trust company and a few days later, about February 18, the decedent, in a conversation with Hulet, spoke of the relief fund provided for in his will and stated that no one could disturb it, to which remark Hulet replied in effect that he thought such fund might be diminished by an election of the widow to take under the law instead of accepting the terms of the will. Decedent expressed the belief that Hulet was mistaken, but when Hulet insisted that his statement was correct, decedent requested him to go to Benjamin Crane, an attorney, and ask him his opinion as to whether Mrs. Ramsey, in the event she should take under the law, would take one-third of the personal property embraced in the "A. F. Ramsey Relief Fund" provided for in the will of February 5, 1907. Hulet procured the opinion of the attorney and at once reported to decedent at his home that upon his death, his widow, in case she took under the law, could take the one-third of said relief fund, to which the decedent replied that he could fix that. On February 21, 1907, the decedent went to the trust company and obtained from his private box in the safety deposit vault of such company all of his certificates of stocks of the Citizens National Bank and all of the bonds of the Indianapolis, Crawfordsville and Western Traction Com-

pany, which he then had in his possession, there being twenty-six of such bonds of $1,000 each, together with the interim certificate representing all of his stock in said traction company, and decedent then and there assigned in blank the printed form on the back of each of such bank stock certificates, four in all, and representing 100 shares of such bank stock. These certificates are identified in the finding by number and the number of shares of stock represented by each certificate is indicated. The blank assignment on the back is also set out. Decedent then delivered the shares of stock so assigned in blank to Hulet as secretary of said trust company and at the same time delivered to him twenty-six of the $1,000 bonds of the Indianapolis, Crawfordsville and Western Traction Company identified in the finding by their number, each of which bonds was payable to bearer and at the same time gave Hulet instructions with reference to the payment of a note which decedent owed the Fletcher National Bank of Indianapolis and directed him upon the payment of the same to procure from such bank fourteen other $1,000 traction company bonds held by said bank as collateral security for the payment of the note, said bonds being payable to bearer (identified by number in the finding) and to deliver such bonds to said trust company. Decedent also at this time delivered to Hulet the interim certificate representing all the shares of stock held by him in said traction company and his written instrument of assignment of all of said stocks and bonds which reads as follows: .

> "This is to certify that I have this day assigned to the Board of Commissioners of Montgomery County, Indiana, and their successors in office, and The Crawfordsville Trust Company, jointly in trust, the following certificates of the Capital Stock of the Citizens National Bank, to wit: Ctf. No. 90 for 50 shares of stock; Ctf. No. 135 for 30 shares of stock; Ctf. No. 117 for 4 shares of stock and Ctf. No. 55 for 16 shares of stock; the said stock of the Citizens National Bank of Crawfordsville, Indiana, being transferred and delivered

to the Crawfordsville Trust Company in lieu of the one hundred (100) shares of the Capital Stock of said Bank willed and bequeathed to them in my will dated February 5th, 1907, and *to be for the same purpose as that stated in my said will and to be subject to the same conditions and management as set out in full in my said will.* I have, also, this day assigned to said Board of Commissioners and said Trust Company and delivered to the said The Crawfordsville Trust Company all my stocks and bonds in the Indianapolis, Crawfordsville and Western Traction Company numbered as follows, to wit:   Nos. 66-69-70-71-72-73-74-75-76-77-79-80-81-173-534-535-536-537-538-539-540-541-542-543-544-545-546 - 547 - 548-549-550-551-552-553-554-555-556-557-558— the said stocks and bonds being transferred and delivered to The Crawfordsville Trust Company in lieu of the said stocks and bonds willed and bequeathed to them in my will of Feb. 5th, 1907, *all of which is for the same purpose as stated and set out in my said will and subject to the same conditions and management as set out in my said will"*.

The stocks and bonds covered by this instrument of assignment are the same stocks and bonds set forth and described in the will of February 5, 1907.

Concurrently with the execution of the instrument of assignment just set out and the delivery of the stocks and bonds mentioned therein, decedent also assigned by signing his name to the printed form on the back, the following additional certificates of the capital stock of the Citizens National Bank of Crawfordsville, to wit, certificate No. 119 for thirty shares, and certificate No. 70 for thirty shares, and then and there delivered the same to said Hulet as secretary of said trust company, and he at the same time signed and delivered a separate instrument of assignment for said sixty shares of said stock which is in the words following:

"I hereby assign and transfer to the Board of Commissioners of Montgomery County, Indiana, and their successors in office, and The Crawfordsville Trust Company of Crawfordsville, Indiana, jointly in trust, the following certificates of the capital stock of the Citizens National Bank of Crawfordsville, Indiana, to wit:

Ctf. No. 70 for thirty shares of stock and Ctf. No. 119 for thirty shares of stock and have delivered it to The Crawfordsville Trust Company for it to be added to and become a part of the fund set apart for the relief of the poor known as the 'A. F. Ramsey Fund' in addition to the one hundred (100) shares of stock of said bank willed and bequeathed to said fund in my will dated February 5, 1907, and afterwards assigned and transferred to said Board of Commissioners and Crawfordsville Trust Company *for the same purpose as that stated and set out in my will and to be subject to the same conditions and management as stated in said will.*"

Hulet as secretary of said trust company placed all of said instruments so delivered to him except said traction bonds in an envelope and wrote on such envelope the words "A. F. Ramsey Relief Fund" and made a package of said traction bonds and wrote thereon the words "Bonds assigned to County Commissioners and The Crawfordsville Trust Company" and thereupon placed all of said papers in the vault of said trust company. About March 1, 1907, Hulet, pursuant to instructions of decedent before referred to, collected a note due decedent and on March 4, 1907, with a part of the proceeds of the note so collected paid the $7,000 note due from decedent to the Fletcher National Bank and took up the fourteen $1,000 traction bonds held by that bank as collateral security and these bonds were added to the package before mentioned containing the other twenty-six of such bonds.

*"At the time of the execution of said instruments of assignment said instruments and said 160 shares of bank stock and the forty bonds of said Indianapolis and Crawfordsville and Western Traction Company were taken possession of by said Walter F. Hulet as secretary of the Crawfordsville Trust Company with directions from said Ramsey to take care of them."* (Our italics.) Said certificates of bank stock were at said time endorsed in blank by decedent, signing his name on the back thereof, without naming any assignee

therein or thereon and neither said bank stock nor the stock of said traction company was transferred on the books of the respective corporations, and said assignments were made *"by the said Ramsey with the intent and for the purpose of preventing his wife, as his widow, from taking any part thereof under the law of the State of Indiana, and at a time when he knew he was afflicted with a fatal disease as the result of which he knew that his death would shortly ensue, and in anticipation thereof."* (Our italics.) At the time decedent executed the assignment, he expressed to Hulet the belief that they were all right but stated that if they were not he would make them so.

Afterwards and prior to March 9, 1907, Hulet was advised by Benjamin Crane that it would be better if the assignments contained all the terms and conditions of said trust expressed in the will and referred to by reference in each assignment, said attorney giving as his reason for such advice that if the will should become lost or destroyed, the trustee would "have no written direction or instruction for the administration of said trust." Thereupon the attorneys Crane and Mount prepared another instrument of assignment and gave it to Hulet advising him to take it to decedent at Hot Springs, Arkansas, and have him sign and execute it. On March 9, 1907, Hulet called on decedent at Hot Springs, Arkansas, and gave to him the assignment so prepared by Crane and Mount and stated to decedent that said attorneys had expressed the opinion that it would be better if the assignment contained all the terms of the trust expressed in the will and decedent expressing satisfaction with such suggestion and a willingness to execute the new assignment, Hulet procured a notary public to come to the rooms of decedent and he, decedent, then and there, to wit, on March 9, 1907, in the presence of Hulet, such notary public and a colored servant, signed and executed said separate instrument of assignment and delivered the same to Hulet, who took and received the same on behalf of The Crawfordsville

Trust Company trustee as in said instrument named and designated, which instrument of assignment was in the words and figures following:

"I hereby assign and transfer and deliver to the Board of Commissioners of the County of Montgomery and State of Indiana, and their successors in office and The Crawfordsville Trust Company of Crawfordsville, Indiana, jointly in trust, for the uses and purposes hereinafter set forth, the following personal property."

The finding here sets out such personal property being the same stocks and bonds before assigned. The finding also sets out the provisions of the assignment as to the purposes, terms and conditions of the trust and all directions and provisions as to its custody and management by the trust company and the manner of administering the income by the board of commissioners and these are all substantially if not identically the same as contained in the will of February 5, 1907, with the additional provision following:

"Provided, however, the said The Crawfordsville Trust Company shall during my lifetime collect and pay over to me all of the income of the property hereby assigned. Also provided further, that this assignment shall be deemed an ademption of the legacy to the said trustee in my will dated Feb. 5, 1907, so far as the same pertains to the Capital Stock of the Citizens National Bank of Crawfordsville, Indiana, and the Stocks and Bonds of The Indianapolis, Crawfordsville & Western Traction Company and no further."

The finding then proceeds in substance as follows: It was the intention and purpose of Ramsey in the execution of this assignment of March 9, 1907, to embody in the written assignment of the stocks and bonds the terms and conditions of the trust upon which the trustees named were to hold the same and the same was made as aforesaid, for no other purposes whatsoever. The Crawfordsville Trust Company and its secretary, Walter F. Hulet, in submitting the assignment of March 9, 1907, to Ramsey for execution and in procuring the execution thereof and in accepting the same

from Ramsey had no other purpose or intention in relation thereto than to protect the interests of the trust company by having the instrument of assignment of said stocks and bonds embody and set forth the terms and conditions of the trust upon which the same were to be held without having to resort to any other instrument for such terms and conditions.    Soon after signing and delivering to Hulet the assignment of March 9, the decedent became much weaker and suddenly died on March 11.

The intent and purpose of Ramsey in the execution of the two instruments of assignment of February 21, 1907, and the separate instrument of assignment of March 9, 1907, as hereinbefore found, and in the delivery of the same to Walter F. Hulet, as secretary of the The Crawfordsville Trust Company, as trustee of the stocks and bonds therein described and as herein found, were to prevent his wife, appellee, from taking her statutory interest in his personal property, described in said instruments of assignment.    Each and all of the instruments of assignment were made without any consideration whatever, at a time when Ramsey was suffering from an incurable disease and well knew that he could live but a short time, and were made by him a short time before and in expectation of death as a result of said disease, *and were conditional on that event and would not have been made had not Ramsey been suffering from said disease and soon expected to die therefrom.*    Each and all of the assignments were made secretly by said Ramsey, without the knowledge or consent of his wife.    Prior to the death of Alexander F. Ramsey, neither the board of directors of the trust company nor the board of commissioners of Montgomery County, took any official action whatever in relation to the property mentioned and included in said instruments of assignment of February 21, 1907, and of March 9, 1907, and prior to his death, neither said board of directors nor said board of commissioners had any knowledge whatever of the execution of either of said instruments, and the possession

of said instruments was taken by Hulet and held by him until after the death of Ramsey without any knowledge on the part of the said trust company, or its agents and officers, other than Hulet and Finley P. Mount, and without any knowledge on the part of the board of commissioners and without any authority whatever of any of the trustees, and no act of acceptance was taken by any of the trustees, under and by virtue of any of said instruments of assignment prior to the death of Ramsey.

Upon these findings the court stated conclusions of law favorable to appellee and rendered judgment accordingly. Separate and joint motions for new trial were made by the several appellants which were overruled and exceptions properly saved. Among the numerous errors assigned by the several appellants, that of The Crawfordsville Trust Company which presents the correctness of the several conclusions of law on the facts found, and the ruling on the motion for a new trial and a motion to retax costs are all that, for the purposes of this opinion, need be indicated.

We are first confronted with a motion by appellee to dismiss this appeal on the ground that the judgment appealed from is one growing out of a matter connected with a

1. decedent's estate and that the transcript of the appeal was not filed in this court within 100 days after the judgment appealed from was rendered as required by §§2977, 2978 Burns 1908, §2454 R. S. 1881, Acts 1899 p. 397. Many cases are cited by appellee, some of which contain expressions that lend apparent support to her conten-. tion, but a careful examination of these and other cases upon the same subject, convinces us that said §§2977, 2978, *supra,* do not cover cases of the character here involved. These sections apply only in those cases where the judgment appealed from was rendered in a suit or proceeding under the provisions of the decedents' estates act. *Browning* v. *McCracken* (1884), 97 Ind. 279; *Bennett* v. *Bennett* (1885), 102 Ind. 86, 1 N. E. 199; *Galentine* v. *Wood* (1893), 137 Ind.

532, 35 N. E. 901; *Harrison Nat. Bank* v. *Culbertson* (1896), 147 Ind. 611, 614, 45 N. E. 657, 47 N. E. 13; *Walker* v. *Steele* (1889), 121 Ind. 436, 22 N. E. 142, 23 N. E. 271; *Mason* v. *Roll* (1891), 130 Ind. 260, 29 N. E. 1135; *Mark* v. *North* (1900), 155 Ind. 575, 57 N. E. 902; *Baker* v. *Edwards* (1900), 156 Ind. 53, 59 N. E. 174; *Roach* v. *Clark* (1897), 150 Ind. 93, 48 N. E. 796, 65 Am. St. 353. The decedents' estates act expressly forbids the bringing of a suit against an executor or administrator by complaint and summons except in suits on the bond of such administrator or executor, and then in certain cases and for certain causes only. §§2828, 2829, 2981 Burns 1908, Acts 1883 p. 151, §§2311, 2458 R. S. 1881. The statute of descents is no part of the decedents' estates act. And, in any event, the general tenor of the pleadings and the facts before set out in this opinion conclusively show that the issues tendered did not involve any question as to appellee's being the widow of the decedent or as to her right to a share in his estate as such widow but the questions were: (1) whether she should be bound by her election as such widow to take under the will instead of under the law; (2) whether the decedent in his lifetime had made a valid transfer and assignment of certain stocks and bonds and thereby parted with the title of the same so that they represented no part of his estate when he died. The only thing that stood in the way of appellee's obtaining the one-third interest in all the property of her deceased husband to which she was entitled as his widow, was the several assignments and transfers of stocks and bonds by her husband in his lifetime, and her own election to take under his will, and, incidentally, the deed made to her by Hepsey B. Yount as consideration for said election. If she could secure the cancellation of these several instruments, there was then no controversy as to what her rights in her husband's estate would be, under the law. The entire gravamen of the action was the cancellation and setting aside of said several instruments, and the relief asked was wholly

equitable. An appeal from a judgment in such cases is under the code and not under the decedents' estates act. *Baker* v. *Edwards, supra; Roach* v. *Clark, supra; ·Heller* v. *Clark* (1885), 103 Ind. 591, 3 N. E. 844. Under these authorities the original motion to dismiss the appeal is overruled.

Since the appeal of this case, the Supreme Court of this State, as before indicated, has decided the case of *Crawfordsville Trust Co.* v. *Ramsey, supra,* which was an appeal from a judgment setting aside the will of Alexander F. Ramsey. The judgment of the trial court setting aside such will was affirmed by the Supreme Court, and we are now asked to dismiss the appeal as to all appellants except the trustees of said trust. A reference to our statement of the facts in this case and the general scope and tenor of the issues are sufficient to indicate that one branch of this appeal, and all questions incident thereto, have been disposed of by the affirmance of the judgment in the will case. While the appellee did not bring the suit to contest her husband's will, yet such will having been declared void in its entirety in that suit, it is void as to all persons interested therein, including the widow who may have elected to take thereunder. The widow no more than any one else can take under a void will. *Floyd* v. *Floyd* (1883), 90 Ind. 130, 134; *Leach* v. *Prebster* (1872), 39 Ind. 492, 498, 499. The provision in the deed from Hepsey B. Yount to appellee set out in our statement of facts shows that it was to be rendered of no effect by a successful contest of the will of Alexander F. Ramsey. An appeal may be dismissed as to a portion of the appellants without affecting others. *Miller* v. *Arnold* (1879), 65 Ind. 488; *Vordermark* v. *Wilkinson* (1896), 147 Ind. 56, 46 N. E. 336; *Chicago, etc., R. Co.* v. *Grantham* (1905), 165 Ind. 279, 282, 75 N. E. 265, and authorities there cited. Where it is properly and conclusively made to appear to the appellate court that litigation pending in such court has been in some

manner ended and disposed of so as to render unnecessary the determination of the questions involved in the appeal, such appeal will be dismissed. *Dunn* v. *State* (1904), 163 Ind. 317, 320, 71 N. E. 890; *Stauffer* v. *Salimonie Min., etc., Co.* (1896), 147 Ind. 71, 73, 46 N. E. 342; *Princeton Coal, etc., Co.* v. *Gilmore* (1907), 170 Ind. 366, and cases cited at 369, 370, 83 N. E. 500; *Rowe* v. *Bateman* (1899), 153 Ind. 633, 54 N. E. 1065, 55 N. E. 754, and cases cited. An

5. appeal will not be entertained for the sole purpose of determining who should pay the cost of the litigation. *Dunn* v. *State, supra; Stauffer* v. *Salimonie Min., etc., Co., supra; Hale* v. *Berg* (1907), 41 Ind. App. 48, 52, 83 N. E. 357, and cases cited. From these propositions of law,

6. it follows that the question of the effect and validity of appellee's election and her revocation of such election, as well as the validity of the deed made to her as consideration therefor and all questions incident thereto, have been elimated by the decision of the Supreme Court in the case of *Crawfordsville Trust Co.* v. *Ramsey, supra,* and that this appeal should be dismissed as to all the appellants except The Crawfordsville Trust Company as executor of the last will of Alexander F. Ramsey, deceased, The Crawfordsville Trust Company, trustee of the A. F. Ramsey Relief Fund for the Poor of Crawfordsville, Indiana, and the Board of Commissioners of the County of Montgomery, trustee of said "Relief Fund."

The only remaining questions relate to the validity of the assignments of the stocks and bonds made by the decedent in his lifetime. This question is presented by the exception to the third and fifth conclusions of law. These conclusions are as follows: "(3) That the several instruments of assignment executed by the decedent Alexander F. Ramsey on February 21, 1907, and March 9, 1907, for one hundred and sixty shares of the capital stock of the Citizens National Bank of Crawfordsville, Indiana, and forty one thousand dollar bonds, and the capital stock of The Indianapolis, Craw-

fordsville and Western Traction Company, to The Crawfordsville Trust Company, of Crawfordsville, Indiana, and the Board of Commissioners of Montgomery County, Indiana, joint trustees, are each and all separately and severally void and of no effect as against the claim of this plaintiff as the widow of Alexander F. Ramsey to her distributive share in the estate of the said Ramsey. (5) That the plaintiff is entitled to her distributive share as the widow of Alexander F. Ramsey, under the statute of Indiana, in the personal property included in the assignments of February 21, 1907, and of March 9, 1907, made by the said Alexander F. Ramsey on said dates, and composed of one hundred and sixty shares of the Capital Stock of the Citizens National Bank of Crawfordsville, Indiana, and Forty One Thousand Dollar Bonds, and the Capital Stock of the Indianapolis, Crawfordsville and Western Traction Company, and that the executor and trustee of said Ramsey should be required to account to her for the same.''

In support of the finding of the court on this branch of the case and its conclusions of law thereon it is insisted by appellee: ·(1) That a bequest to the poor people of Crawfordsville is indefinite and uncertain, and that the trust provision of the will and in the instruments of assignment is void because of the indefiniteness of the beneficiaries; (2) that the trustees named in the will of A. F. Ramsey and in the instruments of assignment are not vested with discretion to select the beneficiaries of the charity from the class named therein and that where a trust created by will for a charitable purpose names no specific beneficiary and gives the trustee no discretion to select such beneficiary, the trust cannot be judicially enforced and is void; (3) the provision of the relief fund is void because against public policy in that the creation of such fund in the form and manner prescribed in the will and instruments of assignment would result in making Crawfordsville the resort of the ''indolent, drunken and worthless''; (4) such provision is·in violation of the terms

of the statute of Indiana relating to perpetuities; (5) that "after the enjoyment of his property in the most absolute manner during almost his entire life the law will not permit a husband, afflicted with a fatal illness, in anticipation of his early demise and with a view of defeating his surviving widow's statutory right in the property under §3025 Burns 1908, Acts 1891 p. 404, to give it away. Especially will the law not permit this to be done where the deed of gift is conditioned on the event of the husband's death or where the husband reserves for life the income of the property."

The questions raised by the first and second propositions announced by appellee would require us to set out in detail the provisions of the will or of the assignment of March 9, 1907, relating to the purposes of said trust fund and its management and control by the trust company and the administering of the income by the board of commissioners of said county, but the conclusion we have reached on appellee's proposition No. 5 makes unnecessary the determination of the validity of the trust attempted to be created by any of said instruments of assignment, and hence we will limit our discussion to proposition No. 5.

In the discussion of the question involved in this proposition, appellants earnestly insist that the assignment of stocks and bonds made February 21, 1907, by Alexander F. Ramsey accompanied by a delivery of the same to the trustee for the benefit of the poor and by a complete surrender of dominion and control thereover constituted a valid gift *inter vivos* without fraud on any right of appellee. In support of this contention it is asserted in effect that §3025 Burns 1908, Acts 1891 p. 404, made no change in the law of descent as to the rights of a widow in her husband's personal estate, but only conferred upon her the same rights when her husband died testate that she already had under the act of 1852 when he died intestate, and that the only effect or intent of such statute of 1891 was to give the widow a right to prevent

the payment of legacies out of her inheritance in her husband's personal property; that statutes in derogation of the common law right to hold and dispose of property ought to be strictly construed, and that when so construed said section becomes only a law of descent as to personal property of testates and confers no more right than any other statute of descent; that there is nothing in this or any other section of the statute law of this State which gives to the wife any interest in the personal estate of her husband during his life, or that in any manner restrains his power of disposition thereof during life; that said section gives the wife no interest in her husband's estate until he dies and then only an interest in the property of which he dies possessed, and this she takes as heir under the statute of distribution and descent and not by contract or purchase; that except as to that property in which the wife has some interest during the lifetime of the husband, his right of disposition during his lifetime is absolute as against her even though for the purpose of preventing her from inheriting.

We cannot agree with appellants' contention that the gift of the stocks and bonds in question by the decedent was a valid gift *inter vivos*. Appellants concede that the following elements are necessary in a gift *inter vivos*: 7. (1) The donor must be competent to contract; (2) there must be freedom of will; (3) the gift must be completed with nothing left undone; (4) the property must be delivered by the donor and accepted by the donee; (5) the gift must go into immediate and absolute effect. The Supreme Court in the case of *Smith* v. *Dorsey* (1872), 38 Ind. 451, 10 Am. Rep. 118, said: "To constitute a valid gift *inter vivos* it is essential that the article given should be delivered absolutely and unconditionally. The gift must take effect at once and completely. * * * Gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect. A court of equity will not interfere and give effect to a gift that is inchoate and incomplete. * * *

'An absolute gift, which divests the donor's title, requires the renunciation on his part, and the acquisition on the part of the donee, of all the title to, interest in, the subject of the gift.' The precise distinction between a gift *inter vivos* and *causa mortis,* as is correctly said in *Bedwell* v. *Carll* [(1865), 33 N. Y. 581], is that, 'in the one case, the title passes immediately to the donee on delivery, and the donor has no more right over the property than any other person; in the other, the title does not pass immediately; it is a conditional gift, to take effect only on the death of the donor, who in the meantime has the power of revocation and may at any time resume possession and annul the gift.'" In the case of *Smith* v. *Ferguson* (1883), 90 Ind. 229, 234, 46 Am. Rep. 216, the Supreme Court said: "An agency is revoked by the principal's death: therefore, the agent of one who intends a gift *inter vivos* must have performed what was incumbent upon him to make the transfer complete during the donor's lifetime; otherwise the gift fails, as though the donor himself had failed to make a reasonable delivery. Nor can a gift *inter vivos* be sustained which contemplates a postponement of delivery by the agent or trustee until the donor's decease; for a gift of personalty made after this fashion must stand, if at all, as a gift *causa mortis,* or else on the footing of a testamentary disposition, with all the formalities of a will." We think it very questionable whether the finding in this case, to the effect that the instruments of assignment and the stocks and bonds were delivered to Hulet as secretary of the trust company "with directions from said Ramsey to take care of them," and an acceptance of the possession of such instruments, stocks and bonds by Hulet under such directions alone, and without any knowledge on the part of either of the trustees, except such knowledge as Hulet might be said to have as secretary of one of the trustees, and with no other acceptance by either of the trustees in the lifetime of the donor, is sufficient to show that absolute and unconditional delivery and acceptance, necessary to con-

stitute a gift *inter vivos* as contemplated by the decisions, *supra*.

The other facts found, viz., that Ramsey at the time of the gift was suffering from an incurable disease and well knew that he could live but a short time, and that he made such gift in expectation of death as a result of said disease, and conditioned on that event, etc., are wholly inconsistent with a gift *inter vivos*. In this connection it should be remarked, however, that appellant insists that there is no evidence to support that part of said finding which states that "each and all of the assignments made by Ramsey were conditioned on the event of his death". We set out the finding of facts in detail on this subject to avoid the necessity of setting out the evidence, and we think it will sufficiently appear from the other facts found by the court, affecting this question, all of which are either admitted or have some evidence for their support, that the ultimate fact that the assignment was conditioned on the event of the death of the donor, was a reasonable, if not a necessary inference to be drawn from the evidence which warranted such other findings. It is not necessary that such condition shall be expressed in words of the donor. It is sufficient if such conditions be either express or implied. Upon this subject Mitchell, C. J., in the case of *Caylor* v. *Caylor's Estate* (1899), 22 Ind. App. 666, 673, 52 N. E. 465, 72 Am. St. 331, said: "A gift *causa mortis* is consummated when a person in peril of death, and under the apprehension of approaching dissolution from an existing disorder, delivers, or causes to be delivered, to another, or affords the other the means of obtaining possession of any personal goods for his own use, upon the express *or implied condition* (our italics) that in case the donor shall be delivered from the peril of death the gift shall be defeated."

The omission of the names of the trustees or assignees in the blank assignment on the back of the stock certificates,

the failure to have the stocks transferred on the books of the bank; the reference to the will as furnishing the purpose and terms of the trust and its management and control, in the assignment of February 21, 1907; the final instructions to Hulet when the papers were all delivered to him to the effect that he should "take care of them"; the expression of the decedent that he would make them right if they were not found to be right; the conduct of the parties with reference to the transaction afterwards; Hulet's impression that Ramsey had retained the income on the stocks and bonds for life when no such provision was in the instruments of assignment; Hulet's failure to say at any time anything about the trust to any member of the board of commissioners or any officer or director of the trust company; Hulet's trip to Arkansas to get a second assignment; these facts and others all tend strongly to show that Ramsey did not intend a fully executed gift *inter vivos* by the transfers and assignment of February 21, and that Hulet did not understand the transaction as perfected and completed so as to put the control of the property assigned, out of the hands of the assignor, during his life.   "The party taking a benefit under a voluntary settlement or gift, containing no power of revocation, has thrown upon him the burden of proving that there was a distinct intention on the part of the donor to make the gift irrevocable." *Ewing* v. *Wilson* (1892), 132 Ind. 223, 234, 31 N. E. 64, 19 L. R. A. 767.  See also, *Sanborn* v. *Lang* (1874), 41 Md. 107; *Dyer* v. *Smith* (1895), 62 Mo. App. 606, 608; *Walker* v. *Walker* (1890), 66 N. H. 390, 31 Atl. 14, 27 L. R. A. 799, 49 Am. St. 616; *Smith* v. *Smith* (1898), 24 Colo. 527, 52 Pac. 790, 65 Am. St. 521; *Smith* v. *Smith* (1896), 22 Colo. 480, 46 Pac. 128, 34 L. R. A. 49, 55 Am. St. 142; *Nichols* v. *Nichols* (1889), 61 Vt. 426, 18 Atl. 153; *Smith* v. *Lamb* (1908), 87 Ark. 344, 112 S. W. 884; *Rice* v. *Waddill* (1901), 168 Mo. 99, 67 S. W. 605.

We must conclude from the finding and the evidence

in this case that there was no intention on the part of the donor to make an irrevocable gift of the stocks and bonds in question.

But appellants insist that even though the gift in question be held to be a gift *causa mortis,* still Alexander F. Ramsey did not die possessed of the stocks and bonds and that the gift must be valid against his heirs, and therefore good as against his widow; that it is only testamentary dispositions of personal property that are assailable by the widow of the decedent. There is authority for the statement that a gift *causa mortis* vests title in the donee conditionally at the time of delivery and that where the donor dies without revoking such gift, the vesting of the property relates back to the time of the delivery thereof; but on the other hand, there is abundance of authority to the effect that a donor who makes a gift *causa mortis* remains seized or possessed of the property until death, within the meaning of a statute giving dower in personal property of which he dies seized. *Hatcher* v. *Buford* (1895), 60 Ark. 169, 29 S. W. 641, 27 L. R. A. 507, and authorities there cited; *Brunson* v. *Henry* (1894), 140 Ind. 455, 464, 39 N. E. 256; *Devol* v. *Dye* (1889), 123 Ind. 321, 325, 24 N. E. 246, 7 L. R. A. 439; *Smith* v. *Ferguson* (1883), 90 Ind. 229, 233, 234, 46 Am. Rep. 216; *Stroup* v. *Stroup* (1894), 140 Ind. 179, 183, 187, 39 N. E. 864, 27 L. R. A. 523; 14 Am. and Eng. Ency. Law (2d ed.) 1052. In the case of *Davis* v. *Davis* (1838), 5 Mo. 183, at page 189, the court said: "But it is argued that they (the property involved) were not his at the time of his death by reason of the deed. I admit that, so far as the mere form of right is concerned, they were not his. Here the form hides the substance, and was intended to do it. But in a court of chancery, no matter how cunningly and deeply covered and concealed the right may be, the deep searching justice of the chancellor, with his argus eyes, will uncover it. The chancery commands the right to remain where it

should have been till all the purposes of justice are accomplished. So, in this case, the chancellor will redeliver the property to the husband, until the wife is endowed, and when that is done, the residue will be turned loose, subject to the action of the law." Aside from the instruments of assignment themselves, the other evidence and the finding in this case show the gift to be testamentary in character. Indeed it would be hard to find a case where the facts outside of the instruments of assignment more strongly tend to show such a gift. That it was originally the intention of the donor to make such gift in this manner is evidenced by his first will made in 1894. That this continued to be his intention is evidenced by his second will of 1906 and his last will of 1907. The gift would have remained testamentary in fact, as well as in intent, had not the donor been advised that in case his wife survived him, she, by an election to take under the law, might diminish the gift to the extent of her one-third interest therein as his widow. It was for the express purpose of preventing this result, that the gift was changed from one testamentary in fact to one colorably absolute. The first assignment still permitted the testamentary instrument to fix and define the purpose of the trust and regulate and direct its management, and the application of the income to be derived therefrom. The gift was not entirely freed from this testamentary taint appearing in fact upon the instruments creating it until the assignment of March 9, 1907, was taken from decedent's home city in Indiana to Arkansas and there presented to him ready for his signature at a time when he and all concerned knew that he was *in extremis*. And, this instrument was so prepared that the donor was allowed to retain the income from the property given during the remainder of his life. This, in some jurisdictions, is held to give the deed of assignment a testamentary effect. *Tucker* v. *Tucker* (1860), 29 Mo. 350, 352, 353. But whether said gift be held to be a gift *causa mortis*

or testamentary in effect, it is clear under the authorities that when made under the circumstances and conditions disclosed by the finding in this case that it will not operate to defeat the widow's interest in the property so given. There can be no question but that the general rule is, that the husband has the absolute control of his personal property during his life to give and dispose of as he wills and may alienate the same without his wife's consent free from any claim of hers, but we think it equally well settled that there are some well defined exceptions to this rule. We think the peculiar facts of this case, indicated in this opinion, bring it clearly within the most exacting exceptions to the general rule as expressed in the courts of practically all jurisdictions including some of those, the decisions of which are relied on by appellant. In the case of *Walker* v. *Walker*, *supra*, 392, the court said: "Upon the facts found at the hearing the bill can be maintained. The attempt of the plaintiff's husband to dispose of nearly all of his personal estate so that he should have the enjoyment and control of it for life and the plaintiff be deprived of any portion of it at his decease, cannot be sanctioned. It is settled law, that conveyances of real estate made by the husband during the coverture for the purpose of defeating the wife's rights, are, as to her, fraudulent and void. Whether the same rule obtains in transfers of personal property for the like purpose when the husband reserves therein no right to himself, is a question upon which the authorities are somewhat at variance; but where the transfer is a mere device or contrivance by which the husband, not parting with the absolute dominion over the property during his life, seeks at his death to deprive his widow of her distributive share, there is no substantial conflict of authority that the rule applicable to conveyances of realty prevails." In the case of *Stone* v. *Stone* (1853), 18 Mo. 389, 392, the court said: "Although dower is given in personal estate by our statute, yet it was not thereby intended to restrain the husband's

absolute control of it during his life, to give and dispose of as he wills; *provided it be not done in expectation of death,* and with a view to defeat the widow's dower. The husband may do as he pleases with his personal property, subject to this restriction. After the enjoyment of the property, in the most absolute manner, during almost his entire life, the law will not permit him, at the approach of death, and with a view to defeat his wife's right of dower, to give it away. *If such a disposition was allowed, the efficacy of the statute conferring dower in personalty* would depend on the whim or caprice of the husband.'' To the same effect are the following cases: *Stone* v. *Stone, supra; Davis* v. *Davis, supra; Murray* v. *Murray* (1890), 90 Ky. 1, 8 L. R. A. 95, 13 S. W. 244; *Manikee* v. *Beard* (1887), 85 Ky. 20, 2 S. W. 545; *Thayer* v. *Thayer* (1842), 14 Vt. 107; 39 Am. Dec. 211, and notes; *McGee* v. *McGee* (1843), 26 N. C. 105; *Tucker* v. *Tucker* (1860), 29 Mo. 350; *Baker* v. *Smith* (1890), 66 N. H. 422, 23 Atl. 82; *Smith* v. *Hines* (1863), 10 Fla. 258; *Dyer* v. *Smith, supra; Walker* v. *Walker, supra; Smith* v. *Smith* (1898), 24 Colo. 527; *Smith* v. *Smith* (1896), 22 Colo. 480; *Nichols* v. *Nichols, supra; Smith* v. *Lamb, supra; Rice* v. *Waddill, supra.*

It is insisted that the finding of facts does not support the conclusions of law because it fails to find that decedent was the owner of the stocks and bonds at the time of his death. While it is true that it is not found in so many words that the decedent died the owner of said stocks and bonds, this is the effect of the finding especially as between the parties here involved. The issue upon this branch of the case was the validity of the instruments of assignment, and whether appellee on account of such assignments should be prevented from taking her third in the property assigned as widow of the assignor. Both appellants and appellee claim through the decedent and a finding of facts that showed the assignment to appellant to be invalid was all that was necessary to warrant the conclusions

of law stated. Where the facts found in the special finding lead to but one conclusion or result, the deduction is a conclusion of law and not an ultimate fact. *DePauw Plate Glass Co.* v. *City of Alexandria* (1898), 152 Ind. 443, 453, 52 N. E. 608; *Indiana Trust Co.* v. *Byram* (1905), 36 Ind. App. 6, 72 N. E. 671, 73 N. E. 1094; *Mayer* v. *Lesh Paper Co.* (1909), 45 Ind. App. 250, 255, 89 N. E. 894, 90 N. E. 651. It is next insisted that the conclusions of law were not authorized because the trial court failed to find fraud as a fact. In view of the other facts found, such a finding was unnecessary. *Stroup* v. *Stroup, supra; Ewing* v. *Wilson, supra; Cotterell* v. *Koon* (1898), 151 Ind. 182, 185, 51 N. E. 235; 14 Cent. L. J. 104.

Error in overruling a motion to retax costs is assigned and relied on for reversal. There seems to have been no judgment for appellants on any issue involved in the case and no motion for any such judgment. On the face of the record and motion, no available error is presented by the ruling on said motion. *VanGundy* v. *Carrigan* (1891), 4 Ind. App. 333, 338, 30 N. E. 933; *Baldwin* v. *Sutton* (1897), 148 Ind. 591, 594, 47 N. E. 629, 1067; *Hooker* v. *Phillippee* (1900), 26 Ind. App. 501, 503, 60 N. E. 167; *Hawkins* v. *Stanford* (1894), 138 Ind. 267, 37 N. E. 794; *Reynolds* v. *Shults* (1885), 106 Ind. 291, 6 N. E. 619.

This disposes of all questions except those presented by the ruling on the motion for new trial. The admission of the evidence of appellee to the effect that she did not see the instrument of March 9, 1907, is complained of. Whether this evidence was admissible for all purposes we need not decide, because it appears that the court stated when admitted that it was admitted as bearing only on the mental condition of the decedent. The evidence was at least admissible as bearing on this question. *Roberts* v. *Huddleston* (1883), 93 Ind. 173; *Stumph* v. *Miller* (1895), 142 Ind. 442, 445, 41 N. E. 812; *Holliday* v. *Thomas* (1883), 90 Ind. 398, 402; *Sunnyside Coal, etc., Co.* v. *Reitz* (1895),

14 Ind. App. 478, 498, 39 N. E. 541, 43 N. E. 46; *Ginn* v. *State* (1903), 161 Ind. 292, 295, 68 N. E. 294, and cases cited.

We deem it unnecessary to discuss the sufficiency of the evidence in this case further than to say that the facts herein stated, and the findings set out all have some evidence to support them. We find no error in the record. Judgment affirmed.

## ON PETITION FOR REHEARING.

HOTTEL, P. J.—Appellants have filed a petition for a rehearing in this case, and, in their brief in support thereof, very earnestly and ably press upon the court their reasons therefor. Our attention is first called to our manner of disposing of the first and second of the five propositions insisted on by appellee and set out in the opinion. The opinion expressly stated that the conclusion reached by the court on the fifth proposition rendered unnecessary a discussion of the other propositions, but in that connection we made some observations with reference to the effect of the decision of the Supreme Court in the case of *Crawfordsville Trust Co.* v. *Ramsey* (1912), 178 Ind. 258, 98 N. E. 177, upon the first and second propositions and appellant's contention in relation thereto, which upon investigation we have concluded are in apparent conflict with some of the decisions to which our attention is called by appellants in their brief on this petition. We have therefore eliminated from the original opinion such observations, they being entirely independent of and unnecessary to the support of the final conclusion reached on the fifth proposition which presented the controlling question upon which the opinion rests.

It is also insisted by appellant that "in the opinion", this court erroneously assumed that the trial court found that the *gift* was conditioned on Ramsey's death, and incorrectly quoted appellant as contending that there was no evidence

to support "that part of said finding which states that the *gift* was conditioned on that event." We inadvertently used the word *"gift"* where strict accuracy required the use of the word "assignments." Appellant's contention made in his original brief was that there was "no evidence in the record to sustain that part of finding 25   *   *   * which is that each and all of the *assignments* made by Ramsey, were conditioned on the event of his death   *   *   *". Appellants, in their original brief, contended that the assignments were set out in the finding and that they show that they were not conditioned on any event. The assignments in this case were the instruments through which the gift claimed by appellant was conveyed, and while such assignments did not in fact constitute the gift, if by the word gift, the property given is meant, yet they did constitute the evidence of the gift here relied on, and when the finding referred to is read in its entirety, it is manifest that by the word *assignments,* as there used, the court intended to convey the same meaning that would have been conveyed by the use of the word gift. In this connection, counsel, in their original brief, said: "Just what the court meant by the words 'conditioned on that event' we are unable to say. If the court meant that the assignments were executed by Mr. Ramsey because he thought he was going to die that might very well bring the gift within the definition of a gift *inter vivos* and at least would not take it out of the terms of a gift *causa mortis.*" We do not think there can be any doubt about the meaning of this finding or the meaning of the words therein "conditioned on that event". Such finding not only means what appellants think it might mean, viz., that the assignments were executed by Mr. Ramsey because he thought he was going to die, but it means more, as clearly appears from the words which immediately follow the words "conditioned on that event", viz., *"and would not have been made had not the said Ramsey been suffering from said disease and soon expected to die therefrom."*

This language certainly puts the meaning of this finding beyond doubt or controversy and it has ample evidence for its support as shown by other findings of an evidentiary character set out in the original opinion, all of which findings had some evidence to support them.

We next consider appellant's contention that the opinion is in conflict with the decision of the Supreme Court in the case of *Pond* v. *Sweetser* (1882), 85 Ind. 144, and that if it stands, it will upset modern business. The answer to the first of these contentions is that the case referred to was decided before the passage of §3025 Burns 1908, Acts 1891 p. 404. While it is true, as appellant contends, that this section of the statute affects only the personal property of which the husband dies seized, and is not intended as a limitation on his right of disposition of such property during his life, yet it is a clear and an express manifestation of the intention of the legislature, expressed since such decision was rendered, to prevent and prohibit the husband from depriving his wife of a one-third interest in his personal property by a testamentary disposition thereof. The findings in this case show that the decedent, Ramsey, did by indirection, that which the section of statute referred to was intended to prevent him from directly doing. With said §3025, *supra*, now a part of the law of the State, we think the facts of this case bring it clearly within the rule laid down in the numerous cases decided in other jurisdictions and cited in the original opinion, involving analogous statutory provisions, and also within the spirit of the more recent holdings of the Supreme Court, all of which recognize and indicate a disposition on the part of courts generally to construe liberally statutes of the character here involved. *Darby* v. *Vinnedge* (1913), 53 Ind. App. 525, 100 N. E. 862, and cases there cited; *Staser* v. *Garr, Scott & Co.* (1906), 168 Ind. 131, 135, 136, 79 N. E. 404, and cases there cited. The conclusion reached in the original opinion is also supported by the numerous decisions of the Supreme

Court and this court which expressly hold that the courts will not permit one to do indirectly that which the law expressly forbids him from doing directly. *Sharp* v. *State, ex rel* (1913), 54 Ind. App. 182, 99 N. E. 1072, and cases cited; *State ex rel,* v. *Forsythe* (1896), 147 Ind. 466, 472, 473, 44 N. E. 593, 33 L. R. A. 221, and cases cited. To us it seems a reflection on "modern business" to assume that it will be disturbed to any appreciable extent by this opinion.

The opinion expressly recognizes the general rule to be that a man, during life, may dispose of his personal property as he pleases, and that his wife or his widow will have no interest in the property so disposed of. It is the exceptional facts and features of the present case that prevent the application of such general rule, and we do not think that "modern business" will have to do very frequently with *gifts* made *in extremis* by a donor who gives because he knows and fully realizes that he is afflicted with a disease from which he *cannot* recover, the gift being conditioned on the event of his death, and with an express reservation of the use of the property given during his life, and changed from a gift by will in the first instance to one by assignment, because the donor, after making his will, learns that his widow may defeat the gift to the extent of her one-third interest therein, and to prevent such a result makes an assignment of the property so willed. Such, in effect, are the findings upon which the original opinion is based. It shows that there was present in this case every element essential and necessary under any and all of the decisions cited in the original opinion, where the facts were held sufficient to take the particular case out of the application of the general rule that permits the husband in life to sell or transfer his personal property as he pleases, and sufficient to bring it within the provisions of a statute intended to preserve the wife's interest in such property as against any disposition thereof, testamentary in character, and made with the intent to defeat the wife of her interest in the

property so disposed of. The petition for rehearing is therefore denied.

NOTE.—Reported in 100 N. E. 1049; 102 N. E. 282. As to gifts *causa mortis*, see 99 Am. St. 890. As to election by widow between benefits of will and right to dower, see 92 Am. St. 695. On the power of a husband or his creditors to defeat dower, see 18 L. R. A. 75. See, also, under (2) 40 Cyc. 1376; (4) 3 Cyc. 188; (5) 2 Cyc. 535; (6) 2 Cyc. 533; (7) 20 Cyc. 1195, 1243; (8) 20 Cyc. 1230; (9) 20 Cyc. 1211; (10) 20 Cyc. 1198; (11) 20 Cyc. 1222; (12) 21 Cyc. 1155; (14) 38 Cyc. 1978; (16) 2 Cyc. 535.