HAROLD LEAZENBY, ADMINISTRATOR OF THE ESTATE OF CLOYD H. LEAZENBY, DECEASED *v.* CLINTON COUNTY BANK AND TRUST COMPANY, TRUSTEE.

[No. 2-1274A304. Filed October 28, 1976.]

*George G. Ponton, Power, Ponton & Nichols,* of Frankfort, for appellant.

*James T. Robison, Robison, Robison & Miller,* of Frankfort, for appellee.

LYBROOK, J.—Defendant-appellant, Administrator of the Estate of Cloyd H. Leazenby, deceased (hereinafter referred to as Cloyd) appeals the judgment of the trial court in favor of the plaintiff-appellee, Clinton County Bank and Trust Company (Bank). The judgment determined that the trust created by Elsie G. Leazenby, who predeceased her husband, Cloyd, was a valid inter vivos trust which is not subject to the administration of her estate.

We affirm.

The facts most relevant to this appeal indicated that Cloyd H. and Elsie G. Leazenby were married in 1951, the second marriage for each. Cloyd was a farmer and he and Elsie

lived on a farm for about nine years after they were married. When they were married, Cloyd owned his farm equipment and a car and each owned some household goods.. In 1960, the Leazenby's moved from the farm to Sedalia, where Cloyd worked at a lumber yard and Elsie continued to be a housewife.

Mrs. Leazenby executed the trust instrument on August 25, 1969, at the Clinton County Bank. Cloyd was not present. Eventually all of Elsie's property was placed in the trust. The Trustee Bank took possession of the intangible property mentioned in the trust instrument. The trust provided that the settlor, Elsie, should receive the income for life, and that the trustee in its sole discretion was empowered to expend the income or corpus for her "care, use, maintenance, and/or benefit." The remainder beneficiaries of the trust were Elsie's two daughters, a granddaughter, and Cloyd who had a right to reside in her home for six months following her death. Cloyd and Elsie had no children together. Elsie reserved the power to transfer additional property to the trust and the right to revoke, alter, or amend the whole or part of the trust agreement by an instrument in writing. The interests and powers reserved by Elsie include (a) a life interest in the income from the trust property, (b) a power to revoke, alter, or amend the trust instrument, and (c) control over the actions of the trustee. The trust further provided that:

"9. It is the intent of the parties hereto that this trust be run as a convenience for the Settlor, and that the Trustee, in the absence of directions from Settlor, may exercise the broad discretion given it herein."

Elsie died on August 13, 1972. On October 5, 1972, the Clinton Circuit Court admitted her Last Will and Testament to probate. Under the terms of the will, after payment of all her debts, the remainder of her property was given to the Clinton County Bank to be added to the trust and distributed pursuant to the terms of the trust. The will made no provision

for Cloyd. The Court ordered that letters testamentary not be issued.

On October 24, 1972, Cloyd filed a petition for appointment of personal representative and issuance of letters testamentary for the estate of Elsie. The Court granted the petition and appointed the Clinton County Bank and Trust Company of Frankfort, as executor of the estate of Elsie G. Leazenby. The Clinton County Bank filed its Motion to Rescind Order and Strike Petition alleging that all of the decedent's property had been conveyed to the Clinton County Bank, as trustee, that there was no probate estate, and that there was no need for an executor. Cloyd filed objections to the Bank's petition, alleging that the trust was colorable and illusory and a fraud upon him because it defeated his statutory right to share in his spouse's estate as provided in IC 1971, 29-1-3-1 (Burns Code Ed.). Simultaneously Cloyd filed his election to take against the will of Elsie.

On February 27, 1974, Cloyd died. The motion to permit substitution of his son, Harold H. Leazenby, as Administrator of the estate of Cloyd was granted.

After trial was held, the court entered its judgment which stated in part:

> "The Court having heard evidence and argument of Counsel and having considered the briefs, and being now duly advised now finds that the order entered herein October 24, 1972, admitting decedent's will to probate, appointing the executor and directing the issuance of letters testamentary was improvident and erroneous, based upon a misapprehension of fact regarding the existence of property which would pass under the laws of descent and distribution.
> "The Court further finds that the trust created by decedent on August 29, 1969, was a valid inter vivos trust which acquired title to all of decedent's property, subject to the terms of the trust agreement, whereby the same is not subject to administration in her estate."

The following issues are presented for our review:

> 1. Is the decision of the trial court contrary to law because it permitted the settlor spouse, Elsie G. Leazenby

to create a revocable inter vivos trust which defeated the right of her surviving spouse, Cloyd H. Leazenby, to share in her estate at her death?

2. Was the decision of the trial court, which found the trust to be valid, contrary to the evidence?

We shall consolidate our discussion of the two issues in this case.

This appeal raises the question, not recently discussed in Indiana case law, which is, to what extent may a married person, who transfers his or her property in trust, retain interest in and control over such property for his or her lifetime, and also make provision for distribution of the property upon his or her death in such a manner as to deny the surviving spouse his or her distributive share to which he or she is entitled by statute. The question involves a conflict between two public policy considerations, one of which favors a provision for support of a surviving spouse in case of disinheritance by the deceased spouse, and the other which favors unfettered inter vivos alienability of one's real or personal property.

The legislature has provided either surviving spouse with a right to take, in an election against the will, a statutory share of the deceased spouse's real and personal property. IC 1971, 29-1-3-1 (Burns Code Ed.). As a second childless spouse, with a deceased wife who had children by a previous marriage, Cloyd may elect to take one-third of the net personal estate of the testator plus a life estate in one-third of her land.

This election interest is not absolutely vested as was the ancient dower interest; it is only an expectant interest, determined at the time of death, and dependent upon the contingency that the property to which the interest attaches becomes part of the decedent's estate. *Newman* v. *Dore* (1937), 275 N.Y. 371, 9 N.E.2d 966; IC 1971, 29-1-3-1 (Burns Code Ed.).

The question remains then, what property of the deceased spouse, Elsie, may be reached by her surviving spouse, Cloyd, upon his election to take against her will? Only such property as would have passed under the laws of descent and distribution may be considered. IC 1971, 29-1-3-1 (Burns Code Ed.). Thus if the inter vivos trust is valid, the trust res will not be in Elsie's estate.

We have considered the Indiana cases, cases from other states, and other authorities, and have concluded that when a settlor transfers and assigns to a trustee title to property owned by him in the creation of a trust inter vivos, and if that trust is found to be a valid trust, then there is no right in the surviving spouse to any of the assets of that trust to satisfy an elected distributive share at the settlor's death.

Some states have held that a trust, otherwise valid under the laws of that particular state, will be found invalid as against the spouse of the settlor, in his or her claim for a distributive share of the deceased spouse's estate, if the inter vivos trust instrument reserved in the settlor extensive powers of dominion and control. *Newman* v. *Dore, supra; Smith* v. *Northern Trust Co.* (1944), 322 Ill. App. 168, 54 N.E.2d 75; *Montgomery* v. *Michaels* (1973), 54 Ill. 2d 532, 301 N.E.2d 465; *Land* v. *Marshall* (Tex. S.Ct., 1968), 426 S.W.2d 841.

However, there is a great disparity of views expressed by the courts on the issue of whether reserved dominion and control will invalidate a valid inter vivos trust for the benefit of the surviving spouse, the main concern being what degree of dominion and control is necessary to partially invalidate the trust in this way. The present vagueness in the law in regard to inter vivos transactions gives latitude to judges in finding a result beneficial to the particular surviving spouse consonant with that state's policy. However, uncertainty imposes a hardship on conscientious settlors and beneficiaries who cannot be certain which good faith arrangements will be

upheld. Power, *The Law and the Surviving Spouse: A Comparative Study,* 39 Ind. L.J. 262 (1964).

For this reason we reject a holding that would find a valid trust under Indiana law to be nevertheless vulnerable to a surviving spouse's election against the will of the deceased spouse. In the discussion which follows we review bases which have been used to invalidate inter vivos dispositions, for the benefit of a surviving spouse's elected share.

First, the trust will be found invalid, if the settlor retains so much control over the disposition and management of the property in the trust that the trustee possesses only a naked or nominal title, which does not impair the full ownership of the *cestui que trust* or beneficiary. *Stroup* v. *Stroup* (1895), 140 Ind. 179, 39 N.E. 864; *Pond* v. *Sweetser* (1882), 85 Ind. 144. This is established by statute, by the provision that when the trustee has neither a power nor a duty related to the administration of the trust, the title will vest directly in the beneficiary, who is the settlor in this case. IC 1971, 30-4-2-9 (Burns Code Ed.) [subject to the land trust provisions of IC 1971, 30-4-2-13 (Burns Code Ed.)].

Second, and similarly, there will be no valid trust where the trustee is merely the agent or representative of the grantor. According to the Restatement, Second, Trusts § 57:

"Where the owner of property transfers it inter vivos to another person in trust, the fact that he reserves not only a power to revoke and modify the trust but also power to control the trustee as to the administration of the trust does not make the disposition testamentary and invalid for failure to comply with the requirements of the Statute of Wills.

\* \* \*

"On the other hand, where the owner of property delivers possession of it to a person as his agent directing him to deliver the property to a third person on the owner's death, a mere agency is created which terminates on the death of

the principal. The disposition in favor of the third person is testamentary and invalid unless the requirements of the Statute of Wills are complied with." Restatement, Second, Trusts § 57 (1959), Comment b, p. 152. See, *Smith* v. *Ferguson* (1883), 90 Ind. 229.

Third, "fraud upon the marital rights" is a test that has also been used to invalidate trusts in this area. This phrase is so often used in a manner devoid of meaning that it presents an unsatisfactory test. See, Power, *The Law and the Surviving Spouse: A Comparative Study*, 39 Ind. L.J. 262, 263, n. 6 (1964). Fraud upon marital rights has been concluded when a trust is found to be invalid for another reason and an intent to deprive a spouse of the statutory share is also found. *Stroup* v. *Stroup, supra.*

The appellant contends there was constructive, not actual fraud in the creation of this trust.

In *Brown* v. *Brown* (1956), 235 Ind. 563, 135 N.E.2d 614, constructive fraud was defined:

" 'Constructive fraud is fraud which arises by operation of law, 'from acts or (a) course of conduct which, if sanctioned by law, would, either in the particular case, or in common experience, secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud." *Leader Publishing Co. et al.* v. *Grant Trust & Savings Co., Trustee* (1914), 182 Ind. 651, 660, 108 N.E. 121.' *Ballard* v. *Drake's Estate* (1937), 103 Ind. App. 143, 148, 5 N.E.2d 671.

"Constructive fraud has also been defined as 'a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence or to injure public interests. Neither actual dishonesty nor intent to deceive is an essential element of constructive fraud.' *Daly* v. *Showers* (1937), 104 Ind. App. 480, 486, 8 N.E.2d 139.

"Such acts or breach of duty may include mistake, undue influence, or duress. 3 Bogert Trusts Pt. 1, ch. 24, § 474, p. 26; 3 Scott on Trusts, § 462.2, p. 2317."

No evidence in the case at bar discloses undue influence, duress, mistake, or a tendency to deceive. The legal or equita-

ble duty as defined by the legislation granting an elective share is construed by this court to proscribe only dispositions of a testamentary character which disinherit a surviving spouse. Since Cloyd had no right or interest in the property of his deceased wife during her lifetime, a valid trust agreement could not be fraudulent, actually or constructively, as to her. "One cannot be defrauded of that to which he has no right." *Cherniack* v. *Home National Bank and Trust Company of Meriden* (1964), 151 Conn. 367, 198 A.2d 58.

Fourth, the appellant Cloyd cites *Newman* v. *Dore, supra,* as authority for holding the trust invalid as against his claim, even though it might be otherwise valid, because of the great amount of dominion and control allegedly retained in the trust instrument by Elsie, the settlor. In *Newman,* the New York Court found that the husband retained substantially the same rights that he possessed under full ownership. That court adopted a test that is essentially the test of whether the husband in good faith had intended to divest himself of ownership of his property or had made an illusory transfer. We have herein rejected the illusory transfer concept as a means of invalidating a valid trust solely to sustain the election claim of the surviving spouse.

Our decision in the case at bar relies upon a reasoning similar to that adopted by the Ohio Supreme Court:

> "It seems incongruous indeed that a trust may be valid giving the trustee title to and a vested interest in the trust property and yet the settlor's widow, upon electing not to take under his will, may be accorded the right by judicial fiat to claim a 'distributive share' of the trust property under the statutes of descent and distribution." *Smyth* v. *Cleveland Trust Co.* (1961), 172 Ohio St. 489, 179 N.E.2d 60, 68, quoting *Bolles* v. *Toledo Trust Co.* (1944), 144 Ohio St. 195, 58 N.E.2d 381, (Zimmerman, J., Dissenting).

The court then proceeded to reject the theory and overrule the precedent which invalidated valid trusts on the basis that they were illusory. Based on the facts in that case the court

found the trust (1) not to be testamentary because the death of the settlor was not a condition precedent to the vesting of interests; (2) not deceiving or tending to deceive nor fallacious, and therefore not fraudulent; and (3) the reserved powers to revoke or modify, the right to income for life, and the right to control investments did not render the trust a mere agency.

We hold, based on the above discussion, that the retention of a life estate in the income from the property transferred to the trust, and the reservation of powers in the trust instrument to revoke, modify, amend, or alter the trust, did not invalidate the trust created by Elsie G. Leazenby.

The appellant Cloyd contends, however, that by including paragraph nine of the trust, the settlor, Elsie, has retained such absolute control and ownership over the trust property to the extent that the trust was illusory and a fraud.

Paragraph nine first states that "It is the intent of the parties hereto that this trust be run as a convenience for the Settlor . . . ." We do not read this to say that the trust be run *at* the convenience *of* the Settlor. It is apparent from the evidence that Elsie wished that someone else would handle, care for, and invest her property; it would be a convenience for her not to be bothered with its management. Such a motive is not inconsistent with the divestment of ownership and control.

The final part of the paragraph nine states: ". . . and that the Trustee, in the *absence of directions* from the Settlor, may exercise the broad discretion given it herein." (Emphasis added.) This provision appears to allow the settlor to control the exercise of the trustee's powers. The trustee was expressly given broad discretion under the trust.

Upon the instrument and upon all of the extrinsic evidence admitted at the trial, the court found that the trust

instrument was valid. We cannot disturb the trial court's judgment unless we are satisfied that it was clearly erroneous, giving due regard to the opportunity of the finder of fact to judge the credibility of witnesses. Ind. Rules of Procedure, Appellate Rule 15(N).

We cannot say that the judgment of the trial court was clearly erroneous as contrary to the evidence when all of the evidence supports the conclusion that Elsie Leazenby created a valid inter vivos trust, and placed in the third party professional trustee broad discretion over management, investments and disbursements.

The language of the trust instrument supports the conclusion that Elsie intended to create vested beneficial interests in her daughters, granddaughter, and husband, that she intended to transfer the legal title to her property to the trustee, and that she reserved for herself only a beneficial life estate in the trust income which would support and maintain her in her old age.

The specific facts in the case at bar strengthen our belief that the trust was valid. The testimony at trial showed that Elsie and Cloyd kept their accounts separately. Elsie made the inter vivos trust three years before her death. While she was in a nursing home the trust income was used to pay her expenses and bills. There is no evidence that Elsie ever exercised her power to direct the trustee, or ever acted in any manner that would be inconsistent with, or divest the remainder beneficiaries of, their interests. Subsequent words and conduct may be admissible as evidence of the settlor's intent at the creation of the trust. 2 Scott, Law of Trusts § 164.1 (3rd. ed. 1967). Further, there is no conclusive evidence that there was a secreting of the real ownership of the property, or that Cloyd did not know and fully approve of the trust arrangement. The Bank was under no obligation to notify Cloyd since he was not its client. Because the trust

paid for his wife's nursing home care and medical bills, it may reasonably be inferred that he was aware of the trust.

Our decision to uphold the inter vivos trust created by Elsie Leazenby is consistent with this state's policy to favor a construction of a trust which will uphold its validity and find that the settlor did not intend to violate any statute or rule of law. *Warner* v. *Keiser* (1931), 93 Ind. App. 547, 177 N.E. 369.

This rule of construction supports the public policy considerations recognized in this state, favoring the free alienability of property inter vivos. Consistent with a policy to broaden the ability of property owners to transfer their property, the Indiana legislature abolished the estates of dower and curtesy, and granted women powers to alienate property consonant with those possessed by men.[2] It is no argument that because one cannot by testamentary disposition exclude a spouse's elective share, that one cannot accomplish the same result by a valid trust agreement. *West* v. *Miller* (7th Cir., 1935), 78 F.2d 479.

This state has also expressed a policy that if a man or woman retains ownership of his or her property until death, then a portion of it must be shared with the surviving spouse. The justification for this, is to secure a minimal means of sustenance for the surviving spouse, and to relieve the State of providing support in situations where advanced age or infirmities make the surviving spouse unable to provide his or her own support. See *The Effect of Forced Share Statutes on Inter Vivos Conveyances of Personalty*, 33 Ind. L.J. 377 (1958).

When a judgment is challenged as being contrary to law, this court must affirm the judgment of the trial court unless the evidence is without conflict and leads to only one conclusion and the trial court has arrived at a different conclusion. *Marshall* v. *Ahrendt* (1975),

2. IC 1971, 31-1-9-2 (Burns Code Ed.), (a woman may transfer property without the joinder of her husband, since 1967).

165 Ind. App. 359, 332 N.E.2d 223. There is substantial evidence to support the trial court's decision to uphold the trust created by Elsie G. Leazenby, therefore we do not find the judgment contrary to law.

Affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 355 N.E.2d 861.