Bonnie L. DUNNEWIND, as Trustee of the Irrevocable Trust Agreement dated February 21, 1995, Bonnie L. Dunnewind Individually, and John T. Dunnewind, Individually, Appellants–Respondents,

v.

Thomas E. COOK, Personal Representative of the Estate of Florence M. Cook, Appellee–Petitioner.

No. 49A05–9710–CV–424.

Court of Appeals of Indiana.

July 10, 1998.

Marvin E. Coffey, Indianapolis, for Appellants–Respondents.

Jack G. Hittle, Church, Church, Hittle & Antrim, Noblesville, for Appellee–Petitioner.

## OPINION

RUCKER, Judge.

Appellants–Respondents Bonnie L. Dunnewind and John T. Dunnewind ("Dunnewinds") appeal from the trial court's order determining that assets remaining in the Irrevocable Trust of Florence M. Cook are

subject to Thomas E. Cook's ("Cook") election to take against the will. The Dunnewinds raise one issue for our review which we rephrase as: whether the trial court erred by including the trust property in the decedent's estate. We affirm.

Cook is the surviving spouse of Florence Cook ("Decedent"). There were no children born of the marriage; however, the Decedent was survived by two children from a prior marriage, Bonnie and John. On July 17, 1976 the Decedent executed a will in which she left all her solely owned property to the Dunnewinds. After discovering she was terminally ill, the Decedent executed an Irrevocable Trust Agreement on February 21, 1995. The trust provided that following Decedent's death, Cook would receive a life estate in the marital residence, a life estate in all household goods and personal property utilized at the marital residence, and the sum of $24,500.00. The trust also provided that upon the death of the Decedent and Cook, any remaining trust assets were to go to the Dunnewinds. The trust made no provision for payment of income to the Decedent. However, Bonnie continued to pay income from the trust for the Decedent's benefit. The trust failed to grant the Decedent the right to live in her residence although it did provide Cook the right to reside there for his lifetime. The Decedent made no changes to her will. She died in July of 1995.

On September 28, 1995 Cook filed a Petition to Determine Assets of the Estate and to Set Aside Irrevocable Trust. Following a hearing, the trial court entered findings of fact and conclusions of law. Among other things, the trial court found that the sole purpose of the trust was to prevent Cook from exercising his statutory right to the Decedent's assets as a subsequent surviving spouse. Based upon the findings, the trial court concluded the trust's purpose was to avoid Cook's election of his statutory right as a subsequent childless spouse, and the trust was not administered according to its terms. Thereupon, the trial court issued an order stating that the assets remaining in the trust on the date of Decedent's death are subject to Cook's election to take against the will. This appeal ensued in due course.

■■■ The Dunnewinds contend the trial court erred in finding and concluding the trust's sole purpose was to avoid an election allowed by I.C. § 29–1–3–1.[1] The trial court entered special findings of fact and conclusions of law pursuant to Dunnewinds' request. Where a party challenges special findings and conclusions pursuant to Ind. Trial Rule 52(A), our standard of review is two-tiered. First, we determine whether the evidence supports the findings, and second whether the findings support the judgment. *Bloodgood v. Bloodgood,* 679 N.E.2d 953, 956 (Ind.Ct.App.1997). The trial court's findings and conclusions will be set aside only if they are clearly erroneous. *Breeden v. Breeden,* 678 N.E.2d 423, 425 (Ind.Ct.App.1997). Findings of fact are clearly erroneous if the record lacks any evidence or reasonable inferences to support them. *Id.* In reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess the credibility of witnesses. *Bloodgood,* 679 N.E.2d at 956. Rather, we must accept the ultimate facts as stated by the trial court if there is evidence to sustain them. *Yates–Cobb v. Hays,* 681 N.E.2d 729, 733 (Ind.Ct. App.1997).

In this case, the testimony and exhibits presented during the hearing revealed that the Decedent executed the trust subsequent to discovering she had terminal cancer. The evidence further showed that this was the first time the Decedent sought assistance with estate planning since 1976. Furthermore, Bonnie Dunnewind testified the Decedent wanted her real estate and personal property to go to the children. Finally, there was no showing that the trust was executed to assist the Decedent with business or financial affairs. The trial court, therefore, entered the following relevant findings of fact:

1. That the Husband and Florence M. Cook were married on April 4, 1973. That at the time of the marriage, both parties had been previously married and had children from a previous marriage, and were

---

1. Under provisions of I.C. § 29–1–3–1(a) Cook would be entitled to one-third (⅓) of the Decedent's net personal estate plus a life estate in one-third (⅓) of the Decedent's real estate.

considered "Second Childless Spouses" as defined under Indiana Code 29-1-2-1. They remained Husband and Wife until the death of Florence M. Cook on July 9, 1995.

2. That Florence M. Cook, on the 17th day of July, 1976, executed a Last Will and Testament ... in which she left all of her solely owned property to her children, Bonnie and John, and made no provisions for her husband, Thomas E. Cook, other than for jointly owned property.

. . . .

4. That in 1994, Florence M. Cook discovered that she had a form of cancer, and began receiving medical treatment for this disease. Doctors told her in November, 1994 that she had 8 months to live.

5. Prior to being diagnosed with terminal cancer, Florence had not contacted an attorney with regard to changing her 1976 will or discussing estate planning. Daughter arranged for her Mother to meet with Attorney Marvin Coffey. These arrangements were made following the diagnosis of terminal cancer. Husband did not accompany Florence to the Attorney's office, and was not present during any of her conversations with Mr. Coffey.

6. [O]n February 21, 1995, Florence met with Attorney Coffey and executed an Irrevocable Trust Agreement.... She made no change to her will.

7. In the Trust, Florence M. Cook left Husband a life estate in her marital residence, a life estate in all household goods and personal property utilized at the marital residence, and the sum of Twenty Four Thousand Five Hundred Dollars ($24,-500.00) to be paid upon her death. Bonnie L. Dunnewind and John T. Dunnewind, Florence's children of a prior marriage, are the remaindermen.

. . . .

9. That Trust did not give Florence any rights to income from the trust.

10. After the execution of the Trust, Daughter continued to pay all trust income to Florence, and testified that she would have continued to pay Florence all income from the trust for the rest of her life.

11. Florence's purpose in establishing the Trust was to assure that her real estate and most of her other assets would go to her children. This was her stated desire.

12. Following the execution of Trust on February 21, 1995, there was no change in the way Florence's business affairs were handled. Husband was told a trust had been made, but was not informed of its terms. He did not ask to be informed of its terms.

. . . .

14. Following the transfer of assets into the trust, there was no change in the management of Florence's business or financial affairs. There is no evidence that the Trust was needed to assist Florence with any management of her business or financial affairs, and no such assistance was given.

15. The sole purpose of Florence executing the Trust, and transferring her assets to the Trust was to prevent Husband from effectively exercising his statutory right as a subsequent surviving spouse to the assets of Florence Cook.

R. at 159–62. The trial court then made the following conclusions:

1. The sole purpose of the Florence Cook Irrevocable Trust was to avoid the effective election by Thomas Cook of his statutory right as a subsequent childless spouse.

2. The Trust ... served no purpose other than the avoidance of Husband's statutory share.

R. at 162–63.

In an election against a will the surviving spouse has the right to take a statutory share of the deceased spouse's real and personal property. Ind.Code § 29-1-3-1. However, only property that passes under the laws of descent and distribution may be reached by a spouse taking against a will. Id.; Leazenby v. Clinton County Bank & Trust Co., 171 Ind.App. 243, 355 N.E.2d 861, 863 (1976). A valid inter vivos trust does not pass under the laws of descent and distribution and thus does not become part of the decedent's probate estate. Leazenby, 355

N.E.2d at 863 (emphasis added). In such a case, "there is no right in the surviving spouse to any of the assets of that trust to satisfy an elected distributive share at the settlor's death." *Id.* at 864.

There are exceptions to the general rule that a trust agreement can defeat a spouse's elective share. Our supreme court addressed such a situation in *Walker v. Lawson*, 526 N.E.2d 968 (Ind.1988). The testator, Sybille Willard, consulted with Lawson for legal advice as to the disposition of her estate after discovering she had cancer. In contemplation of her imminent death, Sybille requested Lawson to establish a trust for the purpose of depriving her husband of any interest in her estate. Lawson prepared a will providing that Sybille's entire estate pass in trust for the benefit of her sons. Sybille's sons later sued Lawson alleging he should have created another means to dispose of her property so that Sybille's spouse could not exercise his right to an elective share. The Court held that under the law enunciated in *Crawfordsville Trust Co. v. Ramsey*, 55 Ind. App. 40, 100 N.E. 1049 (1913), *reh'g denied*, 55 Ind.App. 75, 102 N.E. 282 (1913), Lawson could not devise a means to defeat Sybille's spouse's elective share in contemplation of her death. *Walker*, 526 N.E.2d at 969.

The facts in *Crawfordsville Trust Co. v. Ramsey*, upon which the *Walker* court relied, are as follows: the husband, Alexander Ramsey, knew he was dying and had a short time to live. 100 N.E. at 1052. In anticipation of his demise, Ramsey sought to deprive his wife of her interest in various stocks and bonds by assigning them in lieu of bequeathing them in his will. *Id.* at 1054.

The court found that Ramsey made the assignments in expectation of his death, were conditioned upon his death, and would not have been made had he not been suffering from a disease of which he expected to die. *Id.* at 1056. Given such facts, the court characterized Ramsey's assignments as *gift causa mortis* [2] rather than a valid inter vivos gift.[3] *Id.* at 1061. The court also found the stocks and bonds were originally given as gifts in Ramsey's will but changed to assignments for the purpose of defeating his spouse's interest. *Crawfordsville*, 100 N.E. at 1061. Further, Ramsey retained income from the property given during his life. *Id.* Thus, the court also characterized the assignments as testamentary [4] in effect. *Id.*

Given the facts and surrounding circumstances found in *Crawfordsville*, the court stated that whether the gift be held to be a *gift causa mortis* or testamentary in effect, it will not operate to defeat the spouse's interest in the property. *Id.* The court in *Crawfordsville* on rehearing thus held:

> The opinion expressly recognizes the general rule to be that a man, during life, may dispose of his personal property as he pleases, and that his wife or his widow will have no interest in the property so disposed of. It is the exceptional facts and features of the present case that prevents the application of such general rule, and we do not think that "modern business" will very frequently have to do with gifts made in extremis by a donor who gives because he knows and fully realizes that he is afflicted with a disease from which he cannot recover, the gift being conditioned

2. A gift causa mortis is effected if the following conditions are met: (1) the gift was the donor's property; (2) the gift was given while the donor was in peril of death or while under the apprehension of impending death from an existing malady; (3) the donor dies as a result of the disorder without intervening recovery; and (4) there was actual or constructive delivery of the thing given to the donee with the intention that the title vest conditionally upon the death of the donor. *In re Estate of Collinson*, 231 Ind. 605, 108 N.E.2d 700, 701 (1952); *Bulen v. Pendleton Banking Co.*, 118 Ind.App. 217, 78 N.E.2d 449, 456 (1948).

3. An inter vivos gift is one by which the donee becomes in the lifetime of the donor the absolute owner of the thing given. *Shourek v. Stirling*, 652 N.E.2d 865, 867 (Ind.Ct.App.1995). An inter vivos gift occurs when: (1) the donor is competent to contract; (2) the donor has freedom of will; (3) the donor intends to make a gift; (4) the gift is completed with nothing left undone; (5) the property is delivered by the donor and accepted by the donee; and (6) the gift is immediate and absolute. *Id.*

4. With a testamentary gift, the transferor enjoys the property throughout his or her life. *In re Estate of Bannon*, 171 Ind.App. 610, 358 N.E.2d 215, 217 (1976), *reh'g denied*.

on the event of his death, and with an express reservation of the use of the property given during his life, and changed from a gift by will in the first instance to one by assignment, because the donor after making his will learns that his widow may defeat the gift to the extent of her one-third interest therein, and to prevent such result makes an assignment of the property so willed.

*Crawfordsville,* 102 N.E. at 283. Thus, it is apparent that a valid inter vivos trust, like that found in *Leazenby,* may withstand a spouse's election while a *gift causa mortis* or an invalid inter vivos trust, such as one which is testamentary in effect, will not.

The Dunnewinds' contention that the trial court erred in finding the Decedent established the trust solely to defeat Cook's right to his statutory share in the estate amounts to an invitation for this court to reweigh evidence. We decline. The evidence presented at the hearing supports the trial court's findings that the Decedent executed the trust in contemplation of her impending death and did so to defeat Cook's statutory share. The evidence shows that the Decedent sought estate planning assistance only after discovering she was terminally ill and did not have long to live. The Decedent stated that she wanted her children to receive her property. Her attorney advised her to execute a trust rather than updating her will. It can be assumed that the Decedent heeded this advice for the purpose of defeating her spouse's share. Given such circumstances, the trust fails to defeat the spouse's share given the law announced in *Crawfordsville* and *Walker.*

We also note that the trust failed to provide the Decedent with income or the right to reside in her own home. The lack of such provisions implies that neither the trust's beneficiaries nor the Decedent intended the gifts to take effect until the Decedent's death. These facts give the trust a testamentary character thereby failing to defeat the spouse's share under *Leazenby. See Leazenby,* 355 N.E.2d at 865 ("The legal or equitable duty as defined by the legislation granting an elective share is construed by this court to proscribe only dispositions of a testamentary character which disinherit a surviving spouse.").

Finally, the trial court's conclusion entered on the findings sufficiently justifies its order that the assets remaining in the trust be subject to Cook's election to take against the Decedent's will as though the trust assets were assets of the probate estate of the Decedent.

Judgment affirmed.

SHARPNACK, C.J., and GARRARD, J., concur.