**In re the Matter of the ESTATE OF Paul R. WEITZMAN, Deceased.**

**Esther Baldwin Weitzman, Appellant–Petitioner,**

**v.**

**Fort Wayne National Bank, Trustee of the Consolidated Paul R. Weitzman Living Trust, Appellee–Respondent.**

**No. 02A03–9906–CV–232.**

Court of Appeals of Indiana.

Feb. 29, 2000.

Lindy G. Moss, Moss Harris & Yates, Fort Wayne, Indiana, Attorney for Appellant.

J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, Indiana, Attorney for Appellee.

## OPINION

MATTINGLY, Judge

Esther Baldwin Weitzman (Esther) appeals a summary judgment entered in favor of the Fort Wayne National Bank (the Bank) as trustee for the Consolidated Paul R. Weitzman Living Trust (the Trust) and the denial of her own motion for summary judgment. She raises two issues, which we consolidate and restate as whether Paul R. Weitzman's transfers of his assets to the Trust were made in contemplation of death and with the intent to defeat Esther's survivor's allowance and statutory elective share.[1]

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

The designated facts indicate Esther and Paul R. Weitzman (Paul) were married on January 8, 1988. Paul was eighty-three years old and Esther was seventy-nine. Both had children from prior marriages. Before they married, Paul presented Esther with a prenuptial agreement his attorney had prepared. Under the terms of the agreement, Esther would waive her survivor's allowance and statutory elective share of Paul's estate. At the

time, Paul's estate was worth about $1,000,000. Esther and Paul married, though Esther refused to sign the agreement.

After the wedding, Paul moved into Esther's home and the two lived there until Paul died on February 5, 1998. Esther paid the mortgage on the home and Paul paid utilities and the dues at a country club he and Esther frequented. Some four years after the wedding, Paul executed a living trust agreement with the Bank as trustee. Under the terms of the Trust, Paul retained the power to direct all trust investments, to direct that loans be made, to receive regular income from the Trust, to add to or withdraw its assets, and to revoke or amend the Trust. Paul executed a will on May 23, 1996 in which he left to the Trust that part of his estate remaining after the payment of expenses and taxes.

The Trust was initially funded with a ten-dollar deposit and by March 31, 1995 Paul had transferred assets worth almost $500,000 into the Trust. Over the next three months, Paul transferred additional assets worth over $1,000,000 into the Trust. The value of the Trust assets had grown to about $2,300,000 by the time Paul died.[2]

The original trust agreement provided that Esther would receive $50,000 at Paul's death and an annual income of $25,000 thereafter. Subsequent amendments in 1995 and May of 1996 increased the distribution at Paul's death to $75,000 and the annual payment to Esther to $30,000. In 1995, Paul amended the Trust to provide that his grandson would have authority to direct the Trust if Paul became incapable of handling his financial affairs and to establish a mechanism whereby Paul's incapacity would be certified by his physician and the pastor of his church. Esther was not aware of the specific provisions of the Trust, although she was aware that some-

1. Oral argument was held at the Statehouse on February 1, 2000.

2. On May 23, 1996, the assets of the original trust were transferred to the Consolidated Paul R. Weitzman Living Trust.

one was helping Paul with his financial affairs.

Paul was mentally competent and understood his financial affairs when he established and modified the Trust. Esther testified that from 1992 on, Paul began to read the Bible—something he had not done before—and developed a close relationship with the pastor of the Lutheran church where Paul was a member. Paul's physical health was poor. He had prostate problems and had been hospitalized a number of times prior to the creation of the Trust and during the last five to six years of his life. At some point before or during the autumn of 1996, Paul was diagnosed with cancer and hospitalized.[3] He was given three months to live. However, he recovered enough to return home and lived a year longer than expected. In late 1997 or early 1998, Paul broke his hip. After that, his health quickly deteriorated and he died the following February. By the time of Paul's death, all of his assets had been transferred to the Trust and were held by the trustee.

After Paul died, Esther elected to take her statutory share of his estate. She petitioned the court to take jurisdiction over the Trust assets so that they would be included in the estate and thus subject to her elective share. Both parties moved for summary judgment. The trial court granted the Bank's motion and denied Esther's.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judg-

ment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Grose v. Bow Lanes, Inc.*, 661 N.E.2d 1220, 1224 (Ind.Ct.App.1996). We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986).

On appeal from a grant of summary judgment, the burden is on the appellant to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct.App.1995). A fact is "material" for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action. *Weida v. Dowden*, 664 N.E.2d 742, 747 (Ind.Ct.App.1996). A factual issue is "genuine" if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Id.*

The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Hendricks County Bank & Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1183 (Ind.Ct.App.1996).

### Effect of the Trust

Under Ind.Code § 29–1–3–1, the surviving spouse of an individual who dies testate may elect to take against the will if the surviving spouse is not satisfied with the provision made for him or her in the will. In the present case, Esther would be entitled to one-third[4] of Paul's net person-

---

**3.** The record does not reflect when Paul was diagnosed with cancer or informed of the diagnosis. Rather, the designated evidence reflects only that in the fall of 1996 a trust officer at the Bank "first became aware that [Paul] had been diagnosed with cancer." (R. at 77.)

**4.** Generally, a surviving spouse is entitled to one-half of the testator's net estate. However, if the surviving spouse is a second or other subsequent spouse who had no children by the decedent and the decedent left surviving children by a previous spouse, the subsequent spouse is entitled upon election to the lesser proportion of the estate.

al estate and would have a life estate in one-third of his land if she elected to take against the will. *Id.*

■ In determining the net estate of the deceased spouse for the purpose of computing the amount due the spouse electing to take against the will, the court is to consider only such property as would have passed under the laws of descent and distribution. *Id.* A valid *inter vivos* trust does not pass under the laws of descent and distribution and thus does not become part of the decedent's probate estate. *Dunnewind v. Cook,* 697 N.E.2d 485, 488 (Ind.Ct.App.1998), *trans. denied,* 706 N.E.2d 180 (Ind.1998). In *In re Walz,* 423 N.E.2d 729, 732 (Ind.Ct.App.1981) we described the effect of an *inter vivos* trust as follows:

> The inter vivos trust is a unique legal entity. Through its use, the settlor may transfer property to a trustee reserving for the life of the settlor the beneficial use of the property with the remainder to designated beneficiaries. Although the settlor enjoys the beneficial use of the trust property until his death that trust property is not subject to the administration of his estate. That is, the trust property is not in the decedent-settlor's estate. The Probate Code, which controls the distribution of decedent's property, does not control the inter vivos distributions of property.

(Citation omitted). In such a case "there is no right in the surviving spouse to any of the assets of that trust to satisfy an elected distributive share at the settlor's death." *Dunnewind,* 697 N.E.2d at 489, *quoting Leazenby v. Clinton County Bank & Trust Co.,* 171 Ind.App. 243, 248, 355 N.E.2d 861, 864 (1976).

In *Leazenby* we decided that where a wife had established a valid *inter vivos* trust, her husband had no right to any of the assets in the trust to satisfy his election to take against her will. The husband had challenged the validity of the trust on three grounds: constructive fraud, the extent of control over the trust property retained by the settlor, and the relation-

ship between the settlor and the trustee. After determining the trust was valid, we found in favor of the trustee, relying on the established policies favoring 1) a construction of a trust which would uphold its validity; 2) a finding that the settlor did not intend to violate any statute or rule of law; and 3) free alienability of property *inter vivos.* 171 Ind.App. at 254, 355 N.E.2d at 866.

■ There is one pertinent exception to the rules and policies we relied on in *Leazenby.* When a testator executes a trust in contemplation of his impending death and does so in order to defeat the surviving spouse's statutory share, the trust will be considered testamentary in nature and will not defeat the spouse's share. *Dunnewind,* 697 N.E.2d at 490. So, the determinative question before us is whether the trial court properly found that Paul did not establish the Trust in contemplation of his death and with the purpose of defeating Esther's statutory share.

### Was the Trust Created in Contemplation of Death?

In *Crawfordsville Trust Co. v. Ramsey,* 55 Ind.App. 40, 47, 100 N.E. 1049, 1052 (1913) we determined a husband had established a trust in contemplation of his death where the husband, at the time he made each assignment of property to the trust, was aware that he had a fatal illness and had only a short time to live. In *Dunnewind,* we found the evidence supported the trial court's conclusion that the decedent had established a trust solely to defeat her spouse's right to the statutory share where the decedent had sought estate planning assistance only after she discovered she was terminally ill and did not have long to live. We also noted that the trust failed to provide the decedent with income or the right to reside in her own home. The lack of such provisions implied that neither the decedent nor the trust's beneficiaries intended the gifts to take effect until the decedent's death, giving the

trust a "testamentary character." 697 N.E.2d at 490.

The Bank has designated no evidence similar to that relied on in *Ramsey* and *Dunnewind* to indicate Paul did not establish the Trust in contemplation of death. On summary judgment, the moving party bears the burden of proving the absence of a genuine issue of material fact. *Shell Oil Co. v. Lovold Co.*, 705 N.E.2d 981, 984 (Ind.1998). The Bank has not met that burden. While there was evidence that Paul was in failing health and had been hospitalized intermittently throughout the period when he established and amended the Trust, the record does not reflect when Paul was diagnosed with a terminal illness or informed of the diagnosis. The designated evidence indicates only that the Bank's own trust officer was not aware of the diagnosis until some time after the creation of the Trust and some of its amendments. As a result, it is impossible to determine whether or to what extent the diagnosis post-dated the establishment of the Trust or any of its amendments. The Bank has not demonstrated the absence of any genuine issue of material fact as to whether Paul established or funded the Trust in contemplation of death, and summary judgment in its favor on that basis was improper.

### Did Paul Intend to Defeat Esther's Elective Share?

In *Ramsey*, the settlor had sought legal counsel regarding whether his wife could take one-third of the property in a "relief fund" he had established in his will. Counsel opined that she could, "to which the decedent replied that he could fix that." 55 Ind.App. at 53, 100 N.E. at 1054. He then transferred the property to the trust company "for the same purpose as stated and set out in my said will." *Id.* at 56, 100 N.E. at 1055. The trial court found the decedent's intent was to prevent his wife from taking her statutory interest in that property, and we affirmed. *Id.* at 59, 100 N.E. at 1056.

Similarly, in *Dunnewind*, the decedent had stated she wanted her children to receive her property and her attorney had advised her to execute a trust rather than updating her will. There was no showing the trust was executed to assist the decedent with her business or financial affairs. The husband was not present during any of the decedent's conversations with her attorney regarding the trust. Accordingly, the trial court found the sole purpose of the trust was to prevent the husband from exercising his statutory right as a subsequent surviving spouse. 697 N.E.2d at 489.

These two cases contrast with *Leazenby*, where there was "no conclusive evidence that there was a secreting of the real ownership of the property, or that [the husband] did not know and fully approve of the trust arrangement." As a result, we found the *inter vivos* trust to be valid and to have the effect of excluding the husband's elective share. 171 Ind.App. at 253, 355 N.E.2d at 866.

Our supreme court discussed the *Ramsey* and *Leazenby* results in the context of an attorney malpractice action in *Walker v. Lawson*, 526 N.E.2d 968 (Ind.1988). There, after the wife learned she had cancer, she approached an attorney and sought advice as to how to leave her entire estate to her two sons by a prior husband. The attorney prepared a will which so provided and which contained a clause stating the present husband had been purposely omitted. After the wife died, the husband elected to take his statutory share. One of the sons then sued the attorney alleging in part that the attorney committed malpractice by preparing a will instead of creating a trust like the one in *Leazenby*.

The supreme court upheld the trial court's summary judgment for Lawson, the attorney:

> There could be little doubt but that the conversation between Lawson and [the wife] addressed the dilemma of how she was to dispose of her estate in contem-

plation of death.... Lawson was faced with the established law that a spouse cannot by gifts in contemplation of death deprive a surviving spouse of his or her statutory share in the estate.

*Id.* at 969. The court went on to distinguish the *Leazenby* situation, where

> it was obvious [Mrs. Leazenby's] husband knew of [the trust] and acceded to it. There is no indication in *Leazenby* that it was the settlor's intent to use the device of a trust to defeat her husband's statutory share in her estate. She had merely conveyed a portion of her estate during her lifetime, which she had every right to do.

*Id.*

■ Here, the evidence is clear that Paul had tried to influence Esther to sign a prenuptial agreement waiving her rights to her statutory share and some four years later he executed a trust that had much the same effect. Although Esther was aware of the existence of the Trust and was "glad Paul was having somebody help handle his affairs because [she] didn't do any of that for him," (R. at 240), there was no evidence that Esther was aware of the provisions and effect of the Trust. The record is silent as to whether Paul had stated to his attorney or anyone else his purpose for creating the Trust. These facts do not negate the possibility that Paul's intent was to defeat Esther's elective share. Summary judgment for the Bank on this element of the applicable exception was improper.

## CONCLUSION

The Bank has failed to put forward evidence sufficient either to establish the elements of its defense or to negate an essential element of Esther's claim. Summary

judgment was therefore improper and we reverse and remand for trial.[5]

Reversed and remanded.

BAILEY, J. and KIRSCH, J., concur.

---

5. Esther also argues that Ind.Code § 30–4–2–16(a)(1) draws trust assets into the estate for the purpose of determining the value of the spouse's elective share. In that we have determined that the grant of summary judgment in favor of the Bank was in error, we need not address what if any application this statute may have under the circumstances of this case.